Young J. Lee, individually and in her capacity as a shareholder of Hite's Friendly Drug Store No. 5, Inc., et al., Petitioner *v.* Commonwealth of Pennsylvania, Bureau of State Lotteries, Department of Revenue, Respondent.

214

Argued October 16, 1984, before President Judge
CRUMLISH, JR. and Judges ROGERS, WILLIAMS, JR.,
MACPHAIL, DOYLE, BARRY and COLINS.

*Samuel P. Kamin,* for petitioner.

*Nancy A. Patterson,* Assistant Counsel, with her, *George T. Bell,* Chief Counsel, for respondent.

OPINION BY JUDGE BARRY, May 10, 1985:

This case comes before us following a Pennsylvania Supreme Court order reversing our grant of a supersedeas and remanding the case for further proceedings. The question to be considered on remand is whether the revocation of a lottery sales agent's license, issued to Young J. Lee, Inc., t/a Hite's Friendly Drug Store (Petitioner), without a pre-revocation or post-revocation hearing, violates the due process clause of the Fourteenth Amendment of the United States Constitution.

The Petitioner's lottery license was revoked pursuant to Section 7(b) of the State Lottery Law (Law), Act of August 26, 1971, P.L. 351, *as amended,* 72 P.S. §3761-7(b) and its accompanying regulation, 61 Pa. Code §805.17. Section 7(b) of the Law authorizes the Secretary of the Department of Revenue to revoke a lottery license for various reasons including the conviction of a crime involving moral turpitude[1] or being found guilty of any fraud or misrepresentation.[2]

On December 7, 1981 the Petitioner, by its president, Young J. Lee, entered a guilty plea in the Court of Common Pleas of Allegheny County to ten counts of theft by deception.[3] When the Bureau of State Lotteries (Bureau) learned of this it sent Petitioner a notice of revocation citing as the reason for its action the guilty plea of Petitioner as well as Petitioner's

---

[1] 72 P.S. §3761-7(b)(1).

[2] 72 P.S. §3761-7(b)(3).

[3] Young J. Lee, Petitioner's president, was personally charged with violations of 18 Pa. C. S. §4904 (unsworn falsification to authorities), but was placed on Accelerated Rehabilitative Disposition. The license in question here, however, was issued to the corporation.

breach of the terms of the contract between Petitioner and the Bureau. Petitioner requested the Bureau to stay its revocation action pending further review. The Bureau did so and conducted a further review considering facts submitted by Petitioner. The Bureau did not, however, hold a due process hearing. Petitioner's license was then revoked effective July 19, 1982. An appeal to this Court followed and Judge BLATT, in addition to ruling on numerous preliminary motions, granted a stay of the Bureau's order. The Pennsylvania Supreme Court reversed the granting of the stay, but did not reach the due process claim finding that it was not yet ripe for review. *Young J. Lee, Inc. v. Department of Revenue, Bureau of State Lotteries,* 504 Pa. 367, 474 A.2d 266 (1983). The Supreme Court also determined that Petitioner's appeal was within this Court's appellate jurisdiction and stated:

> With respect to the requirement that the legal remedy before the Board of Claims must be inadequate before the Commonwealth Court has jurisdiction, the adequacy of a licensee's remedy in the Board of Claims for revocation of a license for an indefinite term is doubtful. That Board has jurisdiction only of claims arising under "contracts" and then only to award money damages. It has no authority to order the Department to hold a hearing. . . . (Footnote omitted.)

*Id.* at 378, 474 A.2d at 271. Before considering the constitutional question raised we must respond to the Bureau's contention that Petitioner failed to notify the State Attorney General's Office of its constitutional challenge to a Pennsylvania statute pursuant to Pennsylvania Rule of Appellate Procedure 521(a), which requires such notice in situations where "the Commonwealth or any officer thereof, acting in his official capacity, is not a party. . . ." Inasmuch as the Common-

wealth *is* a party to this action, such notice is not required. *See Transamerica Insurance Co. v. Judie, Inc.,* 30 Pa. Commonwealth Ct. 259, 263, 373 A.2d 478, 480 (1977), wherein this Court stated that the Bureau was "an integral part of the Commonwealth." Having thus disposed of the Bureau's argument on this matter, we turn now to the constitutional question.

The determination of whether a hearing is required is based on the basic tenets of due process. "The minimum requirements of due process under the United States Constitution are notice of the basis of governmental action and an opportunity to be heard." *Greco v. Department of Revenue, Bureau of State Lotteries,* (W.D. Pa. No. C.A. 80-1917 filed April 27, 1981), (citing *Wolff v. McDonnell,* 418 U.S. 539 (1974)). "The lack of notice and prior hearing, however, are of no constitutional moment unless a legitimate protected property right had been infringed." *Greco* citing *Board of Regents v. Roth,* 408 U.S. 564, 570 (1972). "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Board of Regents v. Roth,* 408 U.S. at 577.

Petitioner thus claims an entitlement to its one year license, and in support of its position cites numerous cases relating to the revocation, suspension or initial denial of various types of licenses. In *Barry v. Barchi,* 443 U.S. 55 (1979), which is cited by Petitioner, the U.S. Supreme Court recognized a property interest in a horse trainer's license and held that a prompt post suspension hearing was necessary to comport with due process. In *Bell v. Burson,* 402 U.S. 535 (1981), also cited by Petitioner, the Supreme Court held a driver's license to be a protected property interest, recognizing that such a license may be essential

in the pursuit of one's livelihood. Petitioner also cites *Goldsmith v. United States Board of Tax Appeals*, 270 U.S. 117 (1926). In *Goldsmith* the Court determined that a due process hearing was constitutionally required prior to denying an attorney the right to practice law pursuant to the grant of a state license in a certain tax forum. Finally, Petitioner cites *Willner v. Committee on Character and Fitness*, 373 U.S. 96 (1963), in which the Court ruled that due process must be accorded an individual prior to a denial of admission to the bar.

The Bureau attempts to distinguish these cases, arguing that in every one of them, an individual's livelihood was at stake. The Bureau points out that a lottery sales agent is statutorily prohibited from engaging "in business exclusively as a lottery sales agent." 72 P.S. §3761-7(a). Thus, according to the Bureau's argument, monies received from the sales of lottery tickets are merely a secondary source of income. These revenues, however, may constitute a substantial portion of a licensee's income. Furthermore, lottery sales have the effect of increasing traffic in a licensee's store, thereby increasing sales of non-lottery items. Based on these factors, we are unwilling to hold that the loss of a lottery license has only an insubstantial effect on the licensee's livelihood.

The Bureau also argues that the legal relationship between it and Petitioner is based on a contract and in that sense, is not a true license. However, the Supreme Court, in its opinion remanding this matter to us, stated, ". . . A lottery license which permits the licensee to sell state lottery tickets and to receive a commission from the Commonwealth on each sale has features of both a license and a contract between the Commonwealth and the licensee." *Young J. Lee, Inc.*, 504 Pa. at 378, 474 A.2d at 271 (plurality opinion). That this relationship has dual aspects does not per-

suade us to conclude that the protections afforded a license are no longer a concern to us.

Finally we are persuaded by admitted dicta of the Supreme Court in *Young J. Lee, Inc.* Mr. Justice HUTCHINSON, speaking for himself, Mr. Justice FLAHERTY and Mr. Justice ZAPPALA, stated, ''While we agree . . . that the *suspension* of a license to sell lottery tickets does not require a predetermination hearing, due process may require that the licensee be afforded an opportunity to be heard *before a final revocation. . . .''* *Id.* at 378, 474 A.2d at 271 (emphasis added). Furthermore, Mr. Chief Justice ROBERTS, in a concurring opinion joined by Mr. Justice LARSEN, stated, ''Nor has appellee established any likelihood that it will prevail on the merits of its challenge to the revocation of its license *at the pre-revocation hearing to which it is entitled.''* *Id.* at 382, 474 A.2d at 273 (emphasis added). In summation, we believe that petitioner's lottery license gives it a legitimate protected property right which entitles it to due process protection. As petitioner's license was revoked without being afforded these protections, its license must be reinstated until due process is afforded to petitioner.[4]

### ORDER

Now, May 10, 1985, the July 8, 1982 determination of the Bureau of State Lotteries revoking Petitioner's license is reversed and the license is ordered to be reinstated.

---

[4] The Bureau also argues that if a legitimate property interest exists, it is not substantial enough to require any more due process than Petitioner received. As previously discussed, we believe the interest is substantial and the Bureau's argument is meritless. Furthermore, in *Cleveland Board of Education v. Loudermill*, U.S.

(53 U.S.L.W. 4306, decided March 19, 1985), a civil service employee was dismissed for cause without being afforded a pretermination hearing because Ohio law required only a post-termination hearing. The court held, however, that due process required, at a

Judge WILLIAMS, JR. did not participate in the decision in this case.

Judge MACPHAIL dissents.

---

minimum, notice and opportunity to respond *prior to termination* for "a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action." *Id.* at (53 U.S.L.W. at 4309). The court concluded that due process would be satisfied by a pretermination opportunity to respond coupled with the post-termination administrative procedures provided by the Ohio legislature. Importantly, the court stated, "[T]he right to a hearing does not depend on a demonstration of certain success." *Id.*

---

DISSENTING OPINION BY JUDGE DOYLE:

I dissent. The cases cited by Petitioner clearly involve situations where an individual's *livelihood* is at stake. Despite its recognition that a lottery sales agent is statutorily prohibited from engaging in business exclusively as such an agent, the majority finds a property right stating that revenue from the sale of lottery tickets "*may* constitute a substantial portion of a licensee's income." (Emphasis added.) The majority further writes, "lottery sales have the effect of increasing traffic in a licensee's store, thereby increasing sales of non-lottery items." The majority apparently is taking judicial notice of these "facts." The determination that a property right exists based upon these "facts" is, in my view, error.

I believe that the relationship between the Bureau and the lottery sales agent is primarily and essentially contractual in nature. *See Transamerica Insurance Co. v. Judie,* 30 Pa. Commonwealth Ct. 259, 263, 373 A.2d 478, 480 (1977). The application for a sales agent's license is an offer; the approval by the Bureau is the acceptance; the agreements by both parties to be bound by the Law (including those provisions of the Law allowing for license revocation for the reasons

enunciated in Section 7(b), among which reasons is conviction of a crime involving moral turpitude) and the Bureau's regulations constitute the consideration.[1] When Petitioner entered its guilty plea, the Bureau, therefore, under general principles of contract, had the right to terminate the contract.

Further examination of the Bureau's regulations indicates that the benefit conferred upon the licensee (a five per cent commission on sales) is conditioned upon the licensee's own performance. *See* 61 Pa. Code §§805.8 and 805.10. Thus, no vested rights are acquired which would trigger due process. I therefore believe that a lottery license conveys, at most, an expectancy.

Although the Pennsylvania Supreme Court in *Young J. Lee, Inc. v. Department of Revenue, Bureau*

---

[1] The license application states as conditions for licensing

1. The applicant for a lottery sales agent license agrees to be bound by and comply with the provisions of Act No. 91 of 1971, approved August 26, 1971 and any rules, regulations and instructions promulgated heretofore or hereafter by the Bureau of the Lotteries, Department of Revenue, Commonwealth of Pennsylvania, if such license is issued.

. . . .

7. The applicant agrees that the license issued hereunder may be revoked, suspended or its renewal rejected for any or all of the following reasons, but not necessarily limited thereto:

(a) Whenever the applicant knowingly uses false or misleading information in obtaining the license.

(b) Whenever the applicant violates any of the provisions of the State Lottery Law or any rules, regulations or instructions promulgated or issued thereunder by the Bureau of the Lotteries.

(c) Whenever it is determined by the Secretary of Revenue that the applicant fails to meet minimum sales or volume requirements considering the marketing locale of the applicant.

In addition, the actual license incorporates the provisions of the application by reference.

*of State Lotteries,* 504 Pa. 367, 474 A.2d 266 (1983) indicated that the lottery license has features of both a license and a contract, that does not mean that it is in fact a license which triggers due process rights. Additionally, Mr. Justice HUTCHINSON indicated that due process *may* require a hearing.

The legislature knows full well how to indicate its desire that a hearing be held prior to revocation of a license. *See e.g.* Section 471 of the Liquor Code, Act of April 12, 1951, P.L. 90, *as amended,* 47 P.S. §4-471. It gave no such indication of its intent when it passed the Law. Compare, *e.g., The New York state lottery for education law,* N.Y. Tax Law §1607 (Consol. 1984).

Accordingly, I would affirm the Bureau's determination.