**Gary E. WOLFE, D.O., Petitioner,**

v.

**STATE BOARD OF OSTEOPATHIC MEDICINE, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Dec. 9, 1999.

Decided Jan. 31, 2000.

---

LeRoy Smigel, Harrisburg, for petitioner.

Herbert Abramson, Harrisburg, for respondent.

Before DOYLE, President Judge, COLINS, J., and JIULIANTE, Senior Judge.

JIULIANTE, Senior Judge.

Gary E. Wolfe, D.O., petitions for review of the April 16, 1999 order of the State Board of Osteopathic Medicine (Board) denying his petition seeking modification of the Board's adjudication and order suspending his license to practice osteopathic medicine and surgery until May 12, 2001, and stating that he may apply for reinstatement upon completion of his suspension on or after that date. Citing Section 15 of the Osteopathic Medical Practice Act (Act),[1] entitled "Reasons for refusal, revocation or suspension of license," Wolfe argues that the Board erred in denying his petition for modification without holding a hearing. Subsection (d) of that section provides as follows:

> (d) All actions of the board shall be taken subject to the right of notice, hearing, adjudication and appeal therefrom in accordance with the provisions of Title 2 of the Pennsylvania Consolidated Statutes (relating to administrative law and procedure).

63 P.S. § 271.15(d). For the reasons that follow, we affirm the Board's order deny-

---

1. Act of October 5, 1978, P.L. 1109, 63 P.S. § 271.15.

ing Wolfe's modification petition without holding a hearing.

On May 12, 1993, the Board issued an adjudication and order suspending Wolfe's license to practice osteopathic medicine and surgery indefinitely, based on findings that he was unable to practice due to drug abuse and that he had violated a November 20, 1991 probation order of the Board. In that adjudication and order, the Board permitted him to seek reinstatement after five years.

On December 15, 1995, the Board issued another adjudication and order suspending Wolfe's license to practice for three years, to commence on May 12, 1998 and to be served consecutively with the minimum five-year suspension imposed by the Board in its 1993 adjudication and order. This license suspension emanated from Wolfe's convictions in federal court for Medicare and mail fraud and in state court for Medicaid fraud.

On February 23, 1999, Wolfe filed a petition for modification, therein alleging that he has made significant progress in his personal rehabilitation and requesting that the Board schedule a hearing for purposes of considering the reinstatement of his license. The Commonwealth, via the prosecuting attorney for the Bureau of Professional and Occupational Affairs (BPOA), filed an answer to Wolfe's petition therein denying the allegations of mitigation and expressing extraordinary concern as to Wolfe's ability to practice medicine safely in light of his past wrongdoings.

In an order mailed April 16, 1999, the Chairman of the State Board of Osteopathic Medicine denied Wolfe's petition for modification on the basis of the petition and answer thereto. Wolfe filed a petition for review of that order with this Court.[2]

Wolfe contends that all Board decisions should be made only after an evidentiary hearing, except where the Board has no discretion. Citing *Galena v. Com., Department of State, Bureau of Professional and Occupational Affairs*, 122 Pa.Cmwlth. 315, 551 A.2d 676 (1988), Wolfe concedes that the Board need not hold evidentiary hearings where it has no discretion to modify a period of suspension. *See also Denier v. State Board of Medicine, Bureau of Professional and Occupational Affairs*, 683 A.2d 949 (Pa.Cmwlth.1996). In *Galena*, we held that since the State Board of Medicine did not have discretion to suspend Galena's license for a period of less than ten years, it did not err in refusing to grant the doctor a hearing where he could present mitigating evidence against the ten-year suspension.[3]

Wolfe contends that since the Board has discretion under Section 15(c)(5) of the Act to suspend enforcement of a suspension and place a licensee on probation,[4] it has the discretion to modify his suspension. Thus, pursuant to Section 15 of Act, entitled "Reasons for refusal, revocation or suspension of license," Wolfe argues that all actions regarding a modification should not proceed without an evidentiary hearing. He emphasizes Section 15(d), which provides that "[a]ll actions of the board shall be taken subject to the right of notice, hearing, adjudication and appeal therefrom."

**2.** We are limited to determining whether the Board's decision violates the petitioner's constitutional rights or is in violation of the law. *Yurick v. Com., Department of State, Bureau of Professional and Occupational Affairs*, 43 Pa. Cmwlth. 248, 402 A.2d 290 (1979).

**3.** Galena was convicted of 68 counts of knowingly and intentionally distributing or dispensing controlled substances outside and other than in the usual course of professional practice and not for legitimate medical purposes.

**4.** That section provides as follows:

(c) Whenever the board finds that the license or a certificate of a person may be refused, revoked or suspended under the terms of this act, the board may:
. . . .
(5) Suspend enforcement of its finding thereof and place a licensee or physician assistant on probation with the right to vacate the probationary order for noncompliance.
63 P.S. § 271.15(c)(5).

In addition, Wolfe points out that the Board granted another osteopathic doctor, Dr. Zahorian, an evidentiary hearing where that doctor petitioned for modification of his suspension three years after the Board issued an order. (*Zahorian, D.O. v. Commonwealth*, No. 0146–MISC–98, State Board of Osteopathic Medicine, April 15, 1999). Thus, Wolfe argues that because the Board held two evidentiary hearings on two of Dr. Zahorian's petitions for modification, the Board had no grounds for acting on Wolfe's petition without a hearing.

BPOA notes that Wolfe's suspensions originated with adjudications and orders from which he never appealed. Further, it notes that the Board has not initiated any further action against Wolfe since it issued the 1995 adjudication and order. In addition, it points out that Wolfe does not and did not challenge the fact that he received notice and a hearing before the Board imposed both the 1993 and 1995 suspensions.

■ BPOA argues that notice and an opportunity to be heard are required only when the Board takes an action against a licensee. It concedes that the act of suspending or revoking a license infringes upon a legitimate protected property right thereby requiring notice and a hearing. *Lee v. Com., Bureau of State Lotteries, Department of Revenue*, 89 Pa.Cmwlth. 213, 492 A.2d 451 (1985). It contends, however, that the root requirement of due process requires only that an individual be given an opportunity for a hearing *before* he is deprived of any significant property interest. *Firman v. Department of State, State Board of Medicine*, 697 A.2d 291 (Pa.Cmwlth.1997), *appeal denied*, 550 Pa. 722, 706 A.2d 1215 (1998). Unless a legitimate property interest is infringed, the lack of notice and a hearing are of no constitutional moment. *Lee.*

BPOA contends that the Board had no obligation to afford Wolfe a hearing on his petition for modification because, in issuing the order denying his request, the Board did not further infringe upon his right to practice. The 1993 and 1995 adjudications deprived Wolfe of his right to exercise his property interest in his license for specific periods of time and, by virtue of the Board's April 16, 1999 order at issue, Wolfe had no less of a right to practice after the order than he had before issuance of the order. BPOA argues that, since the constitutional obligation to serve notice and hold a hearing is only triggered by the taking of an action which results in the infringement of a legitimate, protected right, the Board was not required to hold a hearing on Wolfe's petition.

In addition, BPOA contends that even though Wolfe desires that his license be reinstated before the minimum time fixed in the 1995 adjudication, he does not have a legitimate claim of entitlement to reinstatement since his right to practice was legitimately stopped for a finite period of time. Thus, it argues that Wolfe has no property interest in having his license reinstated before the minimum time period. *See Lee.*

Further, BPOA argues that Wolfe's reliance on the above-quoted Section 15(d) of the Act, that "[a]ll actions of the board shall be taken subject to the right of notice, hearing, adjudication and appeal," is misplaced. It rejects Wolfe's argument that, under Section 15(d), a licensee has the right to a hearing whenever he asks the Board to reduce his suspension and can adduce some evidence of rehabilitation. BPOA characterizes Wolfe's interpretation of that section as absurd, noting that the Board brought no action against him, did not further curtail his right to his license and the petition was initiated by Wolfe. *See* Section 1922 of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1922 (in ascertaining the intent of the legislature, one must presume that it did not intend to effect an absurd result). Thus, BPOA argues that the Board was not obligated to hold a hearing.

Additionally, BPOA points out that if Wolfe's interpretation of Section 15(d) was correct, any licensee whose license was suspended for a finite period of time would have the right to a hearing at *any* point during the suspension when the licensee saw fit to file a petition to modify the suspension. It contends that such an interpretation would stress the resources of the Board if suspended licensees, who did not appeal from their suspensions, were permitted to file petitions for modification later on when they felt they had reasons for reducing their suspensions. BPOA contends that such an interpretation would render suspensions for one to three years meaningless.

Further, BPOA points out that, even assuming the truth of Wolfe's averments, he has stated no legal grounds for shortening his suspension. It points out that the suspension was imposed upon him as a recidivist violator of the Act to protect the public from an unfit practitioner and to maintain the integrity of the profession. *See Office of Disciplinary Counsel v. Christie*, 536 Pa. 394, 639 A.2d 782 (1994) (in a case involving an attorney's suspension from the practice of law, the Supreme Court noted that criminal laws punish an individual for abhorrent conduct, but that disciplinary sanctions are primarily designed to protect the public from unfit practitioners and to maintain the integrity of the system, not for their punitive effects).

Finally, with regard to the Board granting Dr. Zahorian hearings on his petitions for modification, BPOA points out that the Board's disciplinary decisions are not precedential. If we did consider Dr. Zahorian, however, BPOA points out that, unlike Wolfe, Zahorian's license was not suspended for a time certain. Zahorian's license was subject to a notice of automatic suspension, which does not contain a mini-

mum period of suspension and which does not require a hearing prior to suspension. Thus, in order to determine if and when Zahorian's suspension would come to an end, the Board held a hearing. In Wolfe's case, the Board held a hearing before each of his suspensions. Thus, the two cases are simply not analogous.

■ We conclude that Wolfe was already afforded all of the process that was due to him and necessary to protect his property right in his license when the Board afforded him a hearing *prior* to issuing its 1995 suspension.[5] Section 15(d) is entitled "Reasons for refusal, revocation or suspension of license." When the Board took action in 1995 to suspend Wolfe's license, there is no dispute that it complied with this section. This section is only applicable to those items listed in its title and we decline to interpret the section otherwise. *See* Section 1924 of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1924 ("[t]he title and preamble of a statute may be considered in the construction thereof.") The Board did not suspend Wolfe's license again; it merely denied his modification petition without holding a hearing.

■ The Board is not obligated to afford suspended licensees hearings on petitions to modify their suspensions before the minimum time period has passed. The Board afforded Wolfe a hearing before he was deprived of his license to practice, which is the root requirement of due process. *See Firman.* We reject Wolfe's argument that he has a property interest in having his license reinstated prior to the expiration of the stated period of the suspension. Thus, since the Board, in denying Wolfe's modification petition, did not further infringe upon his property interest in practicing osteopathic medicine, the lack

---

5. We do not base our determination on BPOA's argument that a holding by this Court requiring a hearing would open the floodgates to numerous requests and unduly burden the Board's resources. If we determined that the

Board had to afford hearings in cases such as the one at bar, the Board would have to comply. Due process is never cheap and the finances involved in affording it should not be considered. Process is either due or it is not.

of notice and a hearing were of no constitutional moment in this case. *See Lee.*

■ We note that the purpose of a suspension such as the one imposed here is more to protect the public from an unfit practitioner than to punish him, even if the latter occurs simultaneously. *See Christie; Firman* (holding that, for purposes of analyzing the constitutionality of the automatic suspension provision of the Medical Practice Act of 1985,[6] the state has a significant interest in preventing potential harm from drug-impaired medical practitioners and must be able to act immediately where the acts of a medical practitioner threaten the general public's health and safety); *Quintana v. Com., State Board of Osteopathic Medical Examiners,* 77 Pa. Cmwlth. 438, 466 A.2d 250, 253 (1983) ("the state, through its police powers, may constitutionally impose restrictions upon occupations to protect the general public from those who are incompetent or unqualified to engage in practice"); *Yurick,* 402 A.2d at 292 (the Board "has been given the power under ... the Osteopathic Law to suspend the privilege of those licensees who have breached standards of professional conduct which are established in this Commonwealth to protect and insure our citizens.")

**6.** Act of December 20, 1985, P.L. 457, *as amended,* 63 P.S. §§ 422.1–422.45.

■ We must assume that the time periods chosen for finite suspensions are not arbitrary and were selected as reasonable time periods within which a practitioner possibly could become rehabilitated and cease constituting a threat to the public. Thus, even though we conclude that Wolfe was not entitled to a hearing in this instance, once he becomes eligible for reinstatement, we urge the Board to process his case and similar ones in an expeditious manner.

Accordingly, we affirm the Board's order denying Wolfe's petition for modification.

## *O R D E R*

AND NOW, this 31st day of January, 2000, the April 16, 1999 order of the State Board of Osteopathic Medicine denying Gary E. Wolfe's petition seeking modification of the Board's adjudication and order suspending his license to practice osteopathic medicine and surgery until May 12, 2001, is hereby affirmed.