IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Joseph Thomas Acri, D.O., : 
              Petitioner : 
               : No.  856 C.D. 2017
           v. : 
               : Argued:  December 4, 2017
Bureau of Professional and : 
Occupational Affairs, State Board of : 
Osteopathic Medicine, : 
              Respondent : 

BEFORE:    HONORABLE PATRICIA A. McCULLOUGH, Judge
                HONORABLE MICHAEL H. WOJCIK, Judge
                HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

## *OPINION NOT REPORTED*

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                    FILED:  January 5, 2018

Joseph Thomas Acri, D.O. (Petitioner), petitions for review of the June 2, 2017 order of the Bureau of Professional and Occupational Affairs, State Board of Osteopathic Medicine (Board), that automatically suspended his license to practice osteopathic medicine and surgery pursuant to section 14(b) of the Osteopathic Medical Practice Act (Act),[1] based upon his felony convictions under The Controlled Substance, Drug, Device and Cosmetic Act (CSA).[2]  Upon review, we affirm as modified.

On April 25, 2017, the prosecuting attorney for the Commonwealth filed a petition for automatic suspension of Petitioner's license to practice osteopathic

---

[1] Act of October 5, 1978, P.L. 1109, *as amended,* 63 P.S. §271.14(b).

[2] Act of April 14, 1972, P.L. 233, *as amended,* 35 P.S. §§780-101—780-144.

medicine and surgery,[3] which included a certified copy of a court order showing that Petitioner had pled guilty on September 7, 2016, to four felony counts of violating the CSA for illegally prescribing Oxycodone to patients. The Board issued a notice of automatic suspension to Petitioner, directing that he file an answer to the Petition. In his answer, Petitioner admitted his convictions. Although the Board had previously scheduled a hearing on the matter, it determined that there were no issues of fact as to whether Petitioner was convicted of an offense requiring the automatic suspension of his license. Noting that the license suspension was mandatory and non-discretionary under section 14(b) of the Act, the Board concluded that its prior order scheduling a hearing was moot and entered an order on June 2, 2017, suspending Petitioner's license. In this order, the Board referenced section 6(c) of the Act, indicating that Petitioner would have to wait ten years to reinstate his license, and section 14.1 of the Act,[4] suggesting that Petitioner would have to wait five years to reinstate his license. (Reproduced Record (R.R.) at 26a, 33a, 39a-43a 89a-90a,103a; Board's order at 1-3.)

On appeal to this Court,[5] Petitioner first argues that the Board violated his rights to procedural due process in failing to afford him a pre-deprivation or post-

---

[3] Section 2 of the Act defines "osteopathic medicine and surgery" as "[t]he art and science having for its object the cure of disease and the preservation of the health of man with or without drugs, except healing by spiritual means or prayer." 63 P.S. §271.2. Despite theoretical differences regarding treatment, a medical doctor (M.D.) and a doctor of osteopathy (D.O.) undergo similar training, and they are both "physicians" or "doctors." *See* section 2 of the Medical Practice Act, Act of December 20, 1985, P.L. 457, 63 P.S. §422.2; *Schuelke v. Commissioner of Social Security*, (W.D. Pa., No. 11-519, filed May 10, 2012) (unreported).

[4] Added by Section 8 of Act 1985-108, P.L. 398, 63 P.S. §271.14a.

[5] Our scope of review of the Board's order is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether necessary findings of fact are supported by substantial evidence. *Barran v. State Board of Medicine*, 670 A.2d 765, 767 n.3 (Pa. Cmwlth. 1996).

2

deprivation hearing. This contention, however, is effectively foreclosed by our precedent. *See, e.g., Boulis v. State Board of Chiropractic*, 729 A.2d 645, 648-49 (Pa. Cmwlth. 1999); *Wolfe v. State Board of Osteopathic Medicine*, 745 A.2d 121, 126 (Pa. Cmwlth. 1999); *Firman v. Department of State, State Board of Medicine*, 697 A.2d 291, 296 (Pa. Cmwlth. 1997); *Horvat v. Department of State Professional and Occupational Affairs*, 563 A.2d 1308, 1310-11 (Pa. Cmwlth. 1989); *Galena v. Department of State, Bureau of Professional and Occupational Affairs*, 551 A.2d 676, 678-80 (Pa. Cmwlth. 1988).

Consistent with principles of procedural due process, "a professional license may be automatically suspended without prior notice and a hearing." *Boulis*, 729 A.2d at 648-49. By its own mandatory terms, section 14(b) of the Act required the Board to suspend Petitioner's license: "A license or certificate issued under this act *shall* automatically be suspended . . . upon filing with the board a certified copy of [a] conviction of a felony under the [CSA]." 63 P.S. §271.14(b) (emphasis added). Because this statutory provision does not provide the Board with discretion to impose a sanction that is less severe, Petitioner is not entitled to a hearing to present mitigating evidence. *Firman*, 697 A.2d at 295-96. Rather, the only legal issue before the Board in a suspension proceeding under section 14(b) of the Act is whether Petitioner had the requisite felony conviction(s). *Firman*, 697 A.2d at 295-96. Here, the Board had received certified court records proving that he did, and Petitioner admitted the occurrence of these convictions in his answer. (R.R. at 34a.) Consequently, there are no material issues of fact in dispute, and a post-deprivation hearing is not required to maintain the automatic suspension of Petitioner's license. *See Horvat*, 563 A.2d at 1310-11; *see also The Summit Academy v. Department of Human Services*, (Pa. Cmwlth., No. 257 C.D. 2015, filed December 12, 2015) (unreported), slip op at 14-17;

*Bhalerao v. Illinois Department of Financial & Professional Regulations*, 834 F.Supp.2d 775, 787-88 (N.D. Ill. 2011).

Next, Petitioner contends that, notwithstanding the mandatory and automatic nature of the suspension under section 14(b) of the Act, the Board's decision to suspend his license contravened substantive due process because the penalty imposed was too severe and lacks a rational relationship to a legitimate government interest. Petitioner cites *Ake v. Bureau of Professional and Occupational Affairs, State Board of Accountancy*, 974 A.2d 514 (Pa. Cmwlth. 2009), for support.

Here, Petitioner pled guilty to four felony counts of violating the CSA for unlawfully prescribing Oxycodone to four different patients without a legitimate medical purpose. (R.R. at 59a-90a.) Undoubtedly, the Commonwealth has a compelling interest in protecting the public from obtaining illicit drugs. As physicians possess unique authority to dispense controlled substances, and are entrusted with the responsibility to prescribe controlled substances for a lawful medical purpose, the General Assembly's decision to suspend a physician's license for violating the CSA bears a real and substantial relationship to the goal of safeguarding the public. *See Wolfe*, 745 A.2d at 126; *Firman*, 697 A.2d at 295-96; *Horvat*, 563 A.2d at 1310-11; *Galena*, 551 A.2d at 679.

Petitioner's reliance on *Ake* is not persuasive. Quite simply, under *Ake*, "the nature of the offending conduct and its remoteness in time must be considered where an agency seeks to revoke a professional license on the basis of a conviction." 974 A.2d at 520. In that case, the licensing board revoked the license of a certified public accountant based upon his conviction of criminal harassment, which had occurred seven years prior to the revocation proceedings. The underlying criminal conduct – leaving an offensive phone message – did not transpire at work and was

4

unrelated to the character qualities that the General Assembly indicated were essential to the practice of accounting. On these facts, this Court in *Ake* vacated and remanded to the licensing board for consideration of a penalty that is less severe than revocation, which is "the most drastic available sanction," recommending that "a short-term suspension" would be more appropriate. *Id.* at 552. Here, by contrast, the Board suspended, not revoked, Petitioner's license, and there is no remoteness or "staleness" issue, because the suspension occurred within seven months of Petitioner's convictions. Perhaps more importantly, the misconduct for which Petitioner was suspended involves a core job duty of a physician and reflects an abuse of a privilege that Petitioner would not otherwise possess but for his status as a physician. *Ake* is therefore inapposite.

Because there is a strong correlation between the disciplined misconduct and Petitioner's fitness and competence to practice as a physician, we conclude that the Board did not violate substantive due process when it suspended Petitioner's license. *See Mosuro v. Bureau of Professional and Occupational Affairs, State Board of Medicine*, (Pa. Cmwlth., No. 609 C.D. 2016, filed October 13, 2016) (unreported); *see also Brown v. Idaho State Board of Pharmacy*, 746 P.2d 1006, 1008-09 & 1012 (Idaho 1987); *Griffiths v. Superior Court*, 6 Cal. App. 4th 757, 769-79 (Cal. Ct. App., 2nd Dist., 2002).

Citing *McGrath v. Bureau of Professional and Occupational Affairs*, 146 A.3d 310 (Pa. Cmwlth. 2016) (en banc), *aff'd* __ A.3d __ (Pa., No. 5 WAP 2017 2017, filed November 22, 2017), Petitioner contends that due to ambiguities in the provisions of the Act, he should not have to wait five or ten years to apply for reinstatement.

In sequential order, the relevant sections of the Act are as follows.

5

Under section 6(c) of the Act (Qualifications for license), "[a]n *applicant* who has been convicted of a felonious act prohibited by [the CSA] shall not be licensed unless . . . at least *ten years* have elapsed from the date of conviction" and "the *applicant*" demonstrates that he is rehabilitated and does not pose a risk of harm to the public or propensity to commit further criminal violations. 63 P.S. §271.6(c) (emphasis added).

Section 14(b) of the Act, pertaining to automatic suspension based upon a felony conviction under the CSA, states: "Restoration of such license or certificate shall be made as in the case of *revocation* or *suspension* of license or certificate." 63 P.S. §271.14(b) (emphasis added).

Pursuant to section 14.1 of the Act (Reinstatement of license, certificate or registration), "[a]ny person whose license, certificate or registration has been *revoked* may apply for reinstatement after a period of at least *five years*, but must meet *all of the licensing qualifications of this act* for the license applied for, to include the examination requirement, if he or she desires to practice at any time after such revocation." 63 P.S. 271.14.a (emphasis added).

Section 15(c)(6) of the Act provides: "Whenever the board finds that the license or a certificate of a person may be refused, revoked or *suspended* under the terms of this act, the board may . . . . [r]estore or *reissue* a license to practice osteopathic medicine and surgery . . . ." 63 P.S. 271.15(c)(6) (emphasis added).

In *McGrath*, this Court analyzed substantially similar language contained in sections of The Professional Nursing Law (Law)[6] and concluded that the statute

---

[6] Act of May 22, 1951, P.L. 317, *as amended,* 63 P.S. §§211-225.5. In relevant part, the portions of the Law read as follows:

evidenced irreconcilable ambiguities regarding whether an individual must wait ten years before applying for reinstatement after having his or her license suspended for violating the CSA. In so holding, we noted that a general provision in the Law granted the licensing board with authority to reissue a suspended license, irrespective of a time frame; the section providing for a ten-year waiting period applied to "applicants;" the section dealing with a five-year waiting period concerned the "revocation" and not the "suspension" of a license; and the provisos relating to the "restoration" or "reissuance" of a license made it unclear through which provision the licensing board should consider an application for reinstatement. After applying the general rules of statutory construction, this Court in *McGrath* determined that the statutory language remained

---

Section 6(c)(1) – "The Board shall not issue a license or certificate to an applicant who has been convicted of a felonious act prohibited by [the CSA] . . . unless . . . at least ten (10) years have elapsed from the date of conviction." 63 P.S. §216(c)(1).

Section 15 – "The Board, by majority action and in accordance with its regulations, may reissue any license which has been suspended. If a license has been revoked, the Board can reissue a license only in accordance with section 15.2." 63 P.S. §225.

Section 15.1 – "A license issued under this act shall automatically be suspended . . . upon filing with the Board a certified copy of [a] conviction of a felony under [CSA]. . . . Restoration of such license shall be made as hereinafter provided in the case of revocation or suspension of such license." 63 P.S. § 225.1(b).

Section 15.2 – "Any person whose license has been revoked may reapply for a license, after a period of at least five (5) years, but must meet all of the licensing qualifications of this act for the license applied for, to include the examination requirement, if he or she desires to practice at any time after such revocation." Added by Section 13 of the Act of December 20, 1985, P.L. 409, 63 P.S. §225.2.

*See McGrath*, 146 A.3d at 313.

7

ambiguous, and because the Law was penal in nature, we construed it strictly and in favor of the individual. Therefore, we reversed the licensing board's order to the extent it imposed a license suspension for a mandatory period of not less than ten years and concluded that the licensing board should process any application for reissuance in accordance with the general, discretionary provision of the Law granting it the power to reissue a suspended license.

Here, although section 6(c) of the Act imposes a ten-year waiting period following a conviction under the CSA, this provision, as well as the remaining parts of section 6, applies to "applicants" seeking licensure in the Commonwealth for the first time. On the other hand, section 14(b) of the Act states that a license suspension based upon a violation of the CSA can be restored under the provisions regarding "revocation or suspension" of a license, but section 14.a only applies to the situation where a license has been "revoked," permitting "reinstatement" after a five-year period. Moreover, section 14.a also states that in order to be eligible for reinstatement, the individual must meet "all of the licensing qualifications" of the Act, which necessarily includes the restriction in section 6(c) of the Act, but, again, section 14 pertains only to the situation where a license has been "revoked," and not "suspended." In any event, independent of the other provisions in the Act, section 15(c)(6) of the Act deals directly with a suspended license, vesting the Board with broad, discretionary authority to "reissue" a license that has been "suspended," without regard to any time frame.

Given the circular and confusing nature of these provisions of the Act, we conclude that they suffer the same infirmities in language, structure, and operation as those of the Law at issue in *McGrath*. Therefore, pursuant to our decision in *McGrath*, we modify the Board's order insofar as it imposed a mandatory five or ten year suspension on Petitioner's license. In accordance with this memorandum opinion, any

8

reissuance request from a suspension for violating the CSA shall be processed and reviewed under section 15(c)(6) of the Act.[7]

For the reasons stated, we affirm the Board's order automatically suspending Petitioner's license, albeit as modified by this memorandum opinion.

_____
PATRICIA A. McCULLOUGH, Judge

---

[7] At oral argument, the Board conceded that there were no statutory time constraints placed upon Petitioner and that he could apply for reinstatement or reissuance when he so desires. However, this concession does not alter the fact that the Board's order strongly suggests otherwise, or is at least ambiguous. Although we have no doubt that, in the future, the Board will fulfill its promise to interpret and apply its order in the way that it said it would, this Court nevertheless has an obligation to address the legal issue presented to it. *See also McDonnell v. United States*, __ U.S. __, __,136 S. Ct. 2355, 2372-73 (2016) (declining to "rely on the Government's discretion" in applying a statute in a particular manner in the future based on "the assumption that the Government will use it responsibly.") (citations and internal quotation marks omitted).

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Joseph Thomas Acri, D.O.,  :
          Petitioner  :
            :   No.  856 C.D. 2017
          v.  :
            :
Bureau of Professional and  :
Occupational Affairs, State Board of  :
Osteopathic Medicine,  :
          Respondent  :

## *ORDER*

AND NOW, this 5th day of January, 2018, the June 2, 2017 order of the Bureau of Professional and Occupational Affairs, State Board of Osteopathic Medicine (Board) is affirmed as modified to delete references to sections 6(c) and 14.1 of the Osteopathic Medical Practice Act, Act of October 5, 1978, P.L. 1109, *as amended,* added by Section 8 of Act 1985-108, P.L. 398 (Act), 63 P.S. §§271.6(c), 271.14a, to the extent these provisions set forth a time limitation for reapplying for a license that has been suspended pursuant to section 14(b) of the Act, 63 P.S. §271.14(b), and to direct the Board to process and review any reapplication from such a suspension under section 15(c)(6) of the Act, 63 P.S. 271.15(c)(6).

 

                              _____
                              PATRICIA A. McCULLOUGH, Judge