Carole P. SLATER, Petitioner,

v.

PENNSYLVANIA DEPARTMENT OF EDUCATION and Professional Standards and Practices Commission, Respondents.

Commonwealth Court of Pennsylvania.

Argued Dec. 9, 1998.

Decided Feb. 22, 1999.

---

Ronald N. Watzman, Pittsburgh, for petitioner.

Linda A. McKay and Gregory E. Dunlap, Harrisburg, for respondents.

Before COLINS, President Judge, and McGINLEY, SMITH, PELLEGRINI, FRIEDMAN, KELLEY and FLAHERTY, JJ.

FRIEDMAN, Judge.

Carole P. Slater (Slater) appeals from an order of the Professional Standards and Practices Commission (Commission) granting the Commonwealth of Pennsylvania, Department of Education's (Department) motion to suspend Slater's professional teaching certification.[1] We reverse.

On January 8, 1997, Slater was arrested on charges of endangering the welfare of children, selling/furnishing liquor to minors and corruption of minors.[2] (R.R. at 1a, 8a.) Because these charges involved crimes of moral turpitude, the Department filed a Notice of Charges and a motion for summary judgment with the Commission, seeking the suspension of Slater's teaching certificates pursuant to section 5(a)(11) of the Teacher Certification Law (Law).[3] (R.R. at 1a–4a, 15a–19a.) Slater filed a response to the Notice of Charges and the motion for summary judgment requesting that the charges be dismissed; she also sought an evidentiary hearing in order to present evidence establishing that her husband instigated the charges to aid him in a contentious divorce action.[4]

---

1. Slater holds Instructional I teaching certificates, issued by the Department, endorsed in the areas of Elementary and Early Childhood Education, and she is also certified by the Department as a Reading Specialist. (R.R. at 1a.)

2. Specifically, Slater was accused of engaging in sexual intercourse with a child under the age of 18 and furnishing alcoholic beverages to persons under the age of 21 in the presence of her nine year old son. (R.R. at 6a–7a.)

3. Act of December 12, 1973, P.L. 397, *as amended*, 24 P.S. § 2070.5(a)(11), which provides in relevant part:

> (a) The [Commission] shall have the power and its duty shall be:
>
> ...
>
> (11) ... to suspend the certificate of any professional educator indicted for a crime or misdemeanor involving moral turpitude ...

whenever a certified copy of such indictment shall have been filed with the [C]ommission and to revoke the same upon conviction thereof whenever a certified copy of the verdict or judgment or sentence of the court shall have been filed with the [C]ommission, and to direct reinstatement of such certificate by the [D]epartment in any case where after hearing the [C]ommission shall deem the same just and proper.

4. In her responses, Slater admitted that a certified copy of the criminal information was attached to the Notice of Charges and the motion for summary judgment and that she was charged with endangering the welfare of children, furnishing liquor to minors and corruption of minors; however, Slater denied that these crimes involved moral turpitude or that she endangered the health, safety and welfare of students or others. (R.R. at 11a–12a, 21a–23a.)

(R.R. at 11a–12a, 21a–23a.) On August 11, 1997, following argument on the Department's motion for summary judgment,[5] the Commission granted the motion and ordered the suspension of Slater's professional teaching certificates. (R.R. at 28a.)

Slater now appeals to this court,[6] arguing that because section 5(a)(11) of the Law mandates the suspension of her teaching certificates based solely on the existence of the indictment and the nature of the charges against her, the statute violates her constitutional due process rights by depriving her of a property interest without providing a meaningful pre-deprivation or post-deprivation hearing.[7]

In asserting that Slater improperly was denied a prompt, meaningful post-deprivation hearing, counsel for Slater raises an issue identical to that recently decided by this court in *Petron v.. Department of Education*, 726 A.2d 1091 (1999).[8] In *Petron*, we determined that section 5(a)(11) of the Law, as applied to the petitioner in that case, violated the constitutional mandates of due process; thus, we reversed a Commission order granting the Department's motion to suspend the petitioner's professional teaching certification pursuant to that section. Our decision in *Petron* controls here and, based on the reasoning employed in that case, we now reverse the order of the Commission here and conclude that, as applied to Slater, section 5(a)(11) of the Law did not afford Slater minimal due process protection.

## ORDER

AND NOW, this 22nd day of February, 1999, the order of the Professional Standards and Practices Commission, dated August 11, 1997, at No. DI–97–14, is hereby reversed.

Concurring Opinion by Judge PELLEGRINI joined by Judge McGINLEY.

PELLEGRINI, Judge, concurring.

While I agree with the majority that Section 5(a)(11) of the Teacher Certification Law

---

5. By letter dated June 19, 1997, the Commission notified Slater that it would consider the Department's motion for summary judgment on July 7, 1997. (Supp.R.R.)

6. Our scope of review in this matter is limited to a determination of whether constitutional rights were violated, whether an error of law was committed or whether necessary findings of fact are supported by substantial evidence. *Startzel v. Commonwealth, Department of Education*, 128 Pa.Cmwlth. 110, 562 A.2d 1005 (1989), *appeal denied*, 524 Pa. 636, 574 A.2d 76 (1990).

7. In *Firman v. State Board of Medicine*, 697 A.2d 291 (Pa.Cmwlth.1997), *appeal denied*, 550 Pa. 722, 706 A.2d 1215 (1998), we quoted from the decision of the United States Supreme Court in *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 543, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985), and stated:

> [A]n essential principle of due process is that a deprivation of life, liberty, or property [interests] be preceded by notice and an opportunity for a hearing appropriate to the nature of the case. We have described "the root requirement" of the Due Process Clause as being "that an individual be given an opportunity for a hearing before he is deprived of any significant property interest." This principal requires "some kind of a hearing" prior to the discharge of an employee who has a constitutionally protected property interest in his employment.

*Firman*, 697 A.2d at 295 (citations omitted.) This procedural due process requirement is codified in the Pennsylvania Administrative Agency Law, 2 Pa.C.S. § 504, which provides, "No adjudication of a Commonwealth agency shall be valid as to any party unless he shall have been afforded reasonable notice of a hearing and an opportunity to be heard." *See Commonwealth ex. rel. Ryan v. Rundle*, 411 Pa. 613, 192 A.2d 362, *cert. denied*, 375 U.S. 948, 84 S.Ct. 358, 11 L.Ed.2d 277 (1963) (stating that due process implicates the two basic elements of notice and an opportunity to be heard and to defend oneself).

8. In fact, *Petron* and the present case were argued before this court on the same date. We note that counsel for Petron asserted a violation of due process where Petron's professional teaching certification would be suspended without provisions for a prompt, meaningful post-deprivation hearing. In addition to making this same constitutional argument, counsel for Slater also challenges the lack of a pre-deprivation hearing as a violation of Slater's due process rights. However, we need not address this latter issue in order to afford Slater the relief she requests. Slater has been acquitted of the charges filed against her and, thus, is entitled to reinstatement of her professional teaching certificate. However, Slater's acquittal does not render this particular matter moot because, without our decision now, Slater has no remedy for the back pay she seeks and to which she is entitled.

(Law) [1] does not provide adequate procedural due process protection, I write separately to explain that the Law's due process defect is not that it uses the indictment as a substitute for an administrative pre-deprivation hearing that normally occurs or that it relies on the outcome of the criminal process, i.e., the post-derivation hearing, to determine whether the suspension of a teaching certificate should be lifted. Rather, it is the timing of the post-deprivation hearing that deprives the teaching certificate holder of due process when there is no way to recover back pay. Because the criminal trial, which, under the Law, serves as the post-deprivation hearing, is not required to be held earlier than one year after the indictment, it is not sufficiently prompt when considering that the teacher whose license is suspended but is later acquitted, as here, of all charges is not provided with back pay.[2]

In this case, Slater was arrested on charges of endangering the welfare of children, selling/furnishing liquor to minors and the corruption of minors and was indicted on those charges. Because these charges involved crimes of moral turpitude, the Commonwealth of Pennsylvania, Department of Education (Department) filed a Notice of Charges and a motion for summary judgment with the Professional Standards and Practices Commission (Commission) seeking the suspension of Slater's teaching certificates pursuant to Section 5(a)(11) of the Law. Slater responded by requesting a dismissal of the charges. By letter dated June 19, 1997, the Commission notified Slater that it would consider the Department's motion on July 7, 1997, and that she was also entitled to be heard on that date either in person, in writing or through a designated representative.

At the hearing on July 7, 1997, the only matter to be considered was whether she was indicted and whether it was for a crime of moral turpitude, not the merits of the underlying charges. Counsel for the Department appeared and presented arguments in support of its motion for summary judgment. Slater did not appear personally or through representation and did not submit a written response. The Commission then granted the Department's motion for summary judgment and ordered the suspension of her teaching certificates.

Slater appealed to this Court arguing that Section 5(a)(11) of the Law violated her due process rights and was unconstitutional because it mandated her suspension and deprived her of a property interest based solely on the indictment without providing her with either a pre- or post-deprivation hearing before the Commission where witnesses could be called and cross-examined and it could be determined whether she committed the conduct on which the indictment was based.

A person who is deprived of a property right has a right to a hearing and an opportunity to be heard. *Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). The type and timing of the hearing that a person receives is determined by the following three-part balancing test enunciated in *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976):

> First, the private interest that will be affected by the official action; second, the risk of erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally,

1. Act of December 12, 1973, P.L. 397, *as amended,* 24 P.S. § 2070.5(a)(11). That section provides in relevant part:

 (a) The ... Commission shall have the power and its duty shall be:

 (11) ... to suspend the certificate of any professional educator indicted for a crime or misdemeanor involving moral turpitude ... whenever a certified copy of such indictment shall have been filed with the [C]ommission and to revoke the same upon conviction thereof whenever a certified copy of the verdict or judgment or sentence of the court shall have been filed with the [C]ommission, and to direct

> reinstatement of such certificate by the [D]epartment in any case where after hearing the [C]ommission shall deem the same just and proper.

2. Pa.R.Crim.P. 1100(a)(2) provides that a trial against the defendant who is incarcerated shall commence no later than 180 days from the date on which the complaint is filed. Subsection (a)(3) provides that where the defendant is at liberty on bail, the trial shall commence no later than 365 days from the date on which the complaint is filed.

the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail.

When the suspension is based upon an indictment for crimes involving moral turpitude, as in this case, immediate suspension of a teacher's teaching certificate is required without any administrative hearing, and it remains suspended until the criminal charges are resolved.[3] However, if the teacher is acquitted, the teacher can then seek reinstatement of her teaching certificate which the Commission would be obligated to reinstate. If, however, the Commission believes that despite the acquittal, the teacher's conduct in the criminal proceeding is sufficient to revoke her teaching certificate, it is then required to bring a new proceeding under Section 13(c)(3) of the Law, 24 P.S. § 2070.13(c)(3). Under that provision, prior to a teacher being suspended based on immorality, incompetency, intemperance, habitual drug or narcotic use, cruelty or negligence, a full-blown pre-deprivation hearing that comports with due process is held to allow the teacher to present evidence and cross-examine witnesses.

In this case, Section 5(a)(11)'s use of an indictment can serve as a pre-deprivation hearing and the criminal trial can be used as a post-deprivation hearing under certain circumstances. In *Brown and Charest v. Department of Justice and Immigration & Naturalization Service*, 715 F.2d 662 (D.C.Cir.1983), the D.C. Circuit Court was faced with a similar use of the criminal procedure in an employment suspension case. At issue was whether an indictment was sufficient to constitute a compelling government interest to suspend Brown and Charest from employment without providing either of them with a pre-deprivation hearing.

In that case, Brown and Charest were border patrol agents with the United States Border Patrol, Immigration and Naturalization Service, and were indicted by a federal grand jury for conspiring with other border patrol agents to defraud the United States by interfering with the functions of the Border Patrol. Based solely upon their indictments, Brown and Charest were suspended indefinitely without pay pending the disposition of the criminal charges. Brown and Charest appealed their suspension alleging that they were denied due process because they had been denied a hearing to refute the specific allegations prior to their suspensions. The government argued that based on the indictments, there was reasonable cause to believe that Brown and Charest had committed crimes for which they might be sentenced and it was unnecessary to provide them with hearings for the purpose of refuting the indictments.

The D.C. Circuit held that the indictments alone were sufficient to preclude pre-deprivation hearings. It gave a detailed analysis of the competing interests involved and the practical problem that arises once an employee is suspended because he or she was indicted, explaining the following:

> An indictment is a public record, and public knowledge that an individual formally accused of job-related crimes is still on duty would undoubtedly erode public confidence in the agency. In addition, if an employee indicted on work-related charges were retained on the job and if the employee engaged in conduct of the sort alleged in the indictment, the functioning of the agency might be severely hindered or even undermined ... An employee's suspension pending disposition of the criminal charges thus safeguards the public interest by removing the employee from a position where he or she might repeat the alleged misconduct ... This does not violate the principle that the employee is presumed innocent until proven guilty. In suspending an employee solely on the basis of his or her indictment, the agency is making no assertion about the employee's guilt or innocence; rather, the suspension is merely

---

3. Even if a teacher is convicted of the crimes alleged, she can still petition for reinstatement; but because a criminal conviction for a crime of moral turpitude is preclusive, the offense is proven and it would be at the sufferance of the Commission to reinstate the teaching certificate then or in the future.

a means of safeguarding the legitimate interests of the agency.

The only alternative to allowing suspension on the basis of a job-related indictment is to require the agency to base the suspension on the employee's allegedly unlawful conduct and to prove independently that the conduct actually occurred. Ordinarily, this would entail an administrative inquiry into the alleged conduct and, at least on appeal, the presentation of evidence at an administrative hearing to prove the misconduct. In effect, then, the agency would be required to conduct a mini-trial in order to justify its action against the employee. We have previously noted the "dangers of subjecting an employee to an administrative hearing while criminal action is pending." *Polcover v. Secretary of the Treasury*, 477 F.2d 1223, 1232 (D.C.Cir.), *cert. denied*, 414 U.S. 1001, 94 S.Ct. 356, 38 L.Ed.2d 237 (1973) ... Thus, the interests of both the employee and the public are better protected by allowing suspension based on the fact of indictment alone, rather than requiring administrative inquiry into the unlawful conduct alleged in the indictment.

*Id.* at 667–668. However, it found that the indefinite suspension in that case was justified because in either instance—awaiting the outcome of the criminal justice proceeding or the initiation of the administrative hearing—the result would lead to reinstatement and receipt of back pay or termination of the employee. It indicated that without back pay, the procedure did not adequately protect employee's due process rights.

While *Brown* dealt with employees' property interests after the post-deprivation hearing, i.e., whether they were reinstated and received back wages after they were acquitted, other cases have had similar results when the property interest taken away is a license or some other employment right. In *Federal Deposit Insurance Corporation v. Mallen*, 486 U.S. 230, 108 S.Ct. 1780, 100 L.Ed.2d 265 (1988), the United States Supreme Court held that an indictment alone was sufficient to deny a bank president of a pre-deprivation hearing, but that a post-deprivation hearing was required to be held in

a meaningful manner and at a meaningful time in order to meet due process requirements. In that particular case, the Court found that a post-deprivation hearing that began within 30 days and ended with a decision within 90 days sufficed to provide Mallen with due process.

In *Barry v. Barchi*, 443 U.S. 55, 99 S.Ct. 2642, 61 L.Ed.2d 365 (1979), Barchi was a horse trainer whose license was suspended for 15 days when a horse in his possession tested positive for drugs post-race. The statute on which the Horse Racing Commission relied in suspending his license stated that he was entitled to a post-suspension hearing, but the suspension would remain in effect until there was a hearing and a final determination on the matter. However, there was no specified time in which the hearing had to be held. Because Barchi had a property interest in his horse racing license, the Supreme Court concluded that it was necessary that he was assured a prompt post-suspension hearing that would proceed and conclude without appreciable delay, and because he was denied such a hearing, he was denied procedural due process. The Court stated:

> As the District Court found, the consequences to a trainer of even a temporary suspension can be severe; and we have held that the opportunity to be heard must be "at a meaningful time and in a meaningful manner." *Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965). Here, the provision for an administrative hearing, neither on its face nor as applied in this case, assured a prompt proceeding and prompt disposition of the outstanding issues between Barchi and the State. Indeed, insofar as the statutory requirements are concerned, it is as likely as not that Barchi and others subject to relatively brief suspensions would have no opportunity to put the State to its proof until they have suffered the full penalty imposed. Yet, it is possible that Barchi's horse may not have been drugged and Barchi may not have been at fault at all. Once suspension has been imposed, the trainer's interest in a speedy resolution of

the controversy becomes paramount, it seems to us.

*Id.* at 66, 99 S.Ct. 2642.

Similarly, in *Aurora Enterprises, Inc. v. The State of Florida*, 395 So.2d 604 (Fla.Dist. Ct.App.1981), the Court of Appeals held that the owner of a liquor license whose license was suspended without a hearing was deprived of due process when his post-deprivation hearing was not held until 50 days after the suspension. The Court noted:

> Plainly, no hard and fast rule may be laid down as to the precise period which constitutes a "meaningful time" for a post-suspension hearing. The length of the delay permitted must vary with, among other things, the interest to be protected and the availability of remedies to redress any harm caused by the passage of time ... the closing of a licensee may result in a loss of reputation[4] and would certainly cause a loss of income for neither of which the state would be liable even if it were shown at an adversary hearing that its previous action was unjustified. We, therefore have no difficulty in concluding that the delay in this case went far beyond constitutional boundaries.

*Id.* at 606. *See also Ampuero, M.D. v. Department of Professional Regulation, Board of Medical Examiners*, 410 So.2d 213 (Fla. Dist.Ct.App.1982) (physician whose medical license was suspended was denied due process when his post-deprivation hearing did not occur until six months after suspension of his license). While the government's interest in suspending a horse racing license and a liquor license and employment in the banking industry was not as substantial as here, the government's interest in the physician's medical license is roughly similar. However, no matter the nature of the government's interest, common to all of the cases is the requirement that a full hearing be held relatively soon after the suspension because the charged party can never be recompensed for the loss of income if he or she is found not to have committed the offenses charged.

Taking all of this into consideration, a post-deprivation hearing used in the criminal process as a surrogate for the administrative process does not deny due process as long as the indicted owner of the property interest is entitled to be recompensed if acquitted. In this case, the Department could have provided that if Slater was acquitted, she would have been entitled to receive all back pay and benefits and due process would have been satisfied. Absent that, I believe that a hearing within 365 days as provided by Pa. R.Crim.P. 1100(a)(3) does not satisfy the due process requirement of a prompt post-deprivation hearing for an employed teacher.

Judge McGINLEY joins in this concurring opinion.

---

4. Loss of reputation is not an issue in this case. The Department is making no assertion as to the guilt or innocence of Slater, but is only protecting its legitimate interests in safeguarding children. In any event, any loss of reputation comes from the arrest for offenses upon which the suspension is based and not the suspension itself.