Joseph M. PETRON, Petitioner,

v.

DEPARTMENT OF EDUCATION,
Respondent.

Commonwealth Court of Pennsylvania.

Argued Dec. 9, 1998.
Decided Feb. 22, 1999.

John A. Bacharach, Pittsburgh, for petitioner.

Linda A. McKay, Harrisburg, for respondent.

Before COLINS, President Judge, and McGINLEY, SMITH, PELLEGRINI, FRIEDMAN, KELLEY and FLAHERTY, JJ.

FRIEDMAN, Judge.

Joseph M. Petron (Petron) appeals from an order of the Professional Standards and Practices Commission (Commission) granting the Commonwealth of Pennsylvania, Department of Education's (Department) motion to suspend Petron's professional teaching certification.[1] We reverse.

On April 25, 1996, Petron was arrested on charges of simple assault and endangering the welfare of children.[2] Based on the fact that these charges were for crimes involving moral turpitude, the Department filed a Notice of Charges and a motion for summary judgment with the Commission seeking the suspension of Petron's teaching certificate pursuant to section 5(a)(11) of the Teacher Certification Law (Law).[3] (R.R. at 6a–13a.)

---

1. Petron holds an Instructional II teaching certificate, issued by the Department, endorsed in the area of Music. (R.R. at 1a.)

2. Specifically, Petron was accused of grabbing an 11 year old student by the neck, banging the student into a locker and then throwing the student into a chair. (R.R. at 12a.)

3. Act of December 12, 1973, P.L. 397, *as amended*, 24 P.S. § 2070.5(a)(11), provides in relevant part (emphasis added):

(a) The [Commission] shall have the power and its duty shall be:

(11) ... *to suspend the certificate of any professional educator indicted for a crime or misdemeanor involving moral turpitude ... and to*

Petron filed a response, asserting that the charge for endangering the welfare of children had been *nolle prossed* and the charge for simple assault had been disposed of by his acceptance into the Accelerated Rehabilitative Disposition (ARD) Program.[4] (R.R. at 17a–23a.) Petron maintained that: (1) the Commission could not suspend his teacher's certification because, by virtue of his acceptance into the ARD program for the simple assault charge, a criminal charge was no longer pending against him; and (2) the suspension of his teacher's certification violates his constitutional due process rights.

In a reply letter to Petron's response, the Department asserted that, despite Petron's acceptance into the ARD program, the simple assault charge was still pending against Petron. The Department reasoned that, if Petron violated the ARD conditions prior to his completion of the program, Petron could still be prosecuted on that charge. Because prosecution for a crime involving moral turpitude remained a possibility, the Department maintained that the Commission had the authority to suspend Petron's teaching certification, and that such a suspension did not violate Petron's due process rights. (R.R. at 24a–25a.)

On July 1, 1997, Petron filed a letter responding to the Department's letter; in that letter, Petron reiterated his position that, because he cannot be prosecuted on the simple assault charge *unless and until* he violates a condition of the ARD program, there

is no charge pending against him that would warrant suspension of his teacher's certification, and that such a suspension without a hearing violates his due process rights.[5] (R.R. at 33a–34a.) On November 10, 1997, following argument on the matter, the Commission granted the Department's motion for summary judgment.[6]

Petron filed a timely application for reconsideration, arguing that the Commission abused its discretion by failing to consider Petron's July 1, 1997 response to the Department's motion for summary judgment and Notice of Charges. (R.R. at 26a–28a.) The Commission reconsidered the issue presented, rejected Petron's argument that the charge of simple assault had been disposed of by virtue of Petron's acceptance into the ARD program and, instead, determined that the charge of simple assault remained pending against Petron until his successful completion of the ARD program. Accordingly, upon consideration of the Department's motion for summary judgment, the responses thereto and Petron's request for reconsideration, the Commission vacated its order of November 10, 1997 and ordered the suspension of Petron's teacher's certification, with automatic reinstatement of the certification upon Petron's successful completion of the ARD program.

■ Petron now appeals from that order to this court,[7] repeating his arguments that: (1) by virtue of his acceptance into the ARD

---

revoke the same upon conviction thereof whenever a certified copy of the verdict or judgment or sentence of the court shall have been filed with the [C]ommission, and to direct reinstatement of such certificate by the [D]epartment in any case where after hearing the [C]ommission shall deem the same just and proper.

4. The rules for the ARD program are set forth in Rules 176–86 of the Pennsylvania Rules of Criminal Procedure, Pa.R.Crim.P. 176–86. Our supreme court has held that admission to the ARD program lies within the discretion of the District Attorney, who is free to choose participants according to his determination of the best interests of the defendant and society. *Commonwealth v. Lutz*, 508 Pa. 297, 495 A.2d 928 (1985).

5. On August 4, 1997, the Department filed an amended Notice of Charges with the Commission alleging that Petron engaged in conduct consti-

tuting cruelty, intemperance and negligence. Petron filed an answer to the amended Notice of Charges denying the allegations, requesting a dismissal of the amended charges and requesting a hearing on the matter.

6. In rendering its decision of November 10, 1997, the Commission specifically indicated that it was not expressing an opinion as to the allegations contained in the Department's amended Notice of Charges and that the Department was to pursue those charges in due course.

7. Our scope of review is limited to a determination of whether constitutional rights were violated, whether an error of law was committed or whether necessary findings of fact are supported by substantial evidence. *Startzel v. Commonwealth, Department of Education*, 128 Pa. Cmwlth. 110, 562 A.2d 1005 (1989), *appeal denied*, 524 Pa. 636, 574 A.2d 76 (1990).

program, the simple assault charge against him is postponed and, unless he violates a condition of the ARD program, his instructional teaching certificate may not be suspended pursuant to section 5(a)(11) of the Law, 24 P.S. § 2070.5(a)(11); and (2) because section 5(a)(11) of the Law mandates the suspension of his teaching certification based solely on the existence of the indictment and the nature of the charges against him, the statute violates his constitutional due process rights by depriving him of a property interest without providing a meaningful pre-deprivation or post-deprivation hearing.[8] On the other hand, the Department reasserts its contention that, because the simple assault charge precipitating Petron's entry into the ARD program is dismissed only after Petron successfully completes the ARD program, that charge remains pending until completion of the program, and thus, the Commission may suspend Petron's teaching certification during Petron's participation in the ARD program. We agree that section 5(a)(11) of the Law, as applied to Petron under these circumstances, denied Petron of his constitutional rights to due process.

Although prosecution is *postponed* during Petron's participation in the ARD program, the charge of simple assault will not be dismissed unless and until Petron successfully completes the program.[9] Therefore, because the charge against Petron remains pending, the Commission is required by section 5(a)(11) of the Law to suspend his teacher's certification. Thus, the question before us is whether the suspension of Petron's teacher's certification violates Petron's constitutional rights of due process by depriving him of that property interest without providing a pre-deprivation or post-deprivation hearing.

Here, the Department concedes that Petron's teaching certificate is a constitutionally protected property right entitled to due process protection. *See Bradley v. Pittsburgh Board of Education,* 913 F.2d 1064 (3rd Cir. 1990) (holding that tenured teachers have a property interest in their positions which cannot be taken away without due process of law). However, the Department argues that there is only a minimal likelihood of an erroneous deprivation of an educator's property interest because the Commission provides the educator with a "hearing" to determine whether the offense charged involves moral

8. In *Firman v. State Board of Medicine,* 697 A.2d 291 (Pa.Cmwlth.1997), *appeal denied,* 550 Pa. 722, 706 A.2d 1215 (1998), we quoted from the decision of the United States Supreme Court in *Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 543, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985), and stated:

[A]n essential principle of due process is that a deprivation of life, liberty, or property [interests] be preceded by notice and an opportunity for a hearing appropriate to the nature of the case. We have described "the root requirement" of the Due Process Clause as being "that an individual be given an opportunity for a hearing before he is deprived of any significant property interest." This principal requires "some kind of a hearing" prior to the discharge of an employee who has a constitutionally protected property interest in his employment.

*Firman,* 697 A.2d at 295 (citations omitted). This procedural due process requirement is codified in the Pennsylvania Administrative Agency Law, 2 Pa.C.S. § 504, which provides, "No adjudication of a Commonwealth agency shall be valid as to any party unless he shall have been afforded reasonable notice of a hearing and an opportunity to be heard." *See Commonwealth ex. rel. Ryan v. Rundle,* 411 Pa. 613, 192 A.2d 362, *cert. denied,* 375 U.S. 948, 84 S.Ct. 358, 11 L.Ed.2d 277 (1963) (stating that due process

implicates the two basic elements of notice and an opportunity to be heard and to defend oneself).

9. Pa.R.Crim.P. 181 (emphasis added) provides, in relevant part, "[w]hen a defendant is accepted into the [ARD program] after the filing of an information, the judge shall order that *further proceedings on the charges shall be postponed during the term of the program.*" Once accepted into the ARD program, a defendant may be prosecuted on the charges only if he violates a condition of the program, Pa.R.Crim.P. 182; if a defendant violates a condition of the ARD program, only then may the district attorney file a motion for the defendant to be brought before the court for the matter to proceed ultimately to a trial on the merits of the original charge. Pa.R.Crim.P. 184. However, if the defendant successfully completes the ARD program, he may file a motion for an order dismissing the charges against him and, absent any objection from the Commonwealth, the judge must dismiss the charges against the defendant and order the expungement of the arrest record. Pa.R.Crim.P. 185–86. Here, Petron's acceptance into the ARD program *postponed* all proceedings on the simple assault charge; however, the charge remained pending until Petron's successful completion of the two year program.

turpitude. The Department, however, fails to address Petron's contention that this "hearing" fails to meet the mandates of due process.

█ When determining whether a particular procedure satisfies the mandates of due process, we must consider: (1) the private interest that will be affected by the official action; (2) the likelihood of an erroneous deprivation of such interest as a consequence of the procedure used and the probable value, if any, of additional procedural safeguards; and (3) a balancing of the state interest served by the use of a summary procedure against the burden that would be imposed by an additional, substitute or more rigorous procedure. *Firman v. State Board of Medicine,* 697 A.2d 291 (Pa.Cmwlth.1997), *appeal denied,* 550 Pa. 722, 706 A.2d 1215 (1998) (citing *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976)).

Petron does not dispute that there may be a valid state objective in removing teachers from the classroom when those teachers may constitute a threat to the health, safety or welfare of the students, the teachers or the school; however, Petron maintains that the importance of this interest justifies only a *temporary* suspension prior to a hearing to determine if the threat is real. Petron argues that because section 5(a)(11) of the Law mandates a suspension based only on the fact of an indictment filed against him for a crime involving moral turpitude, the statute creates an irrebuttable presumption that he is unfit to teach, and Petron maintains that such an irrebuttable presumption violates his due process rights where the presumption is not always correct. Accordingly, Petron maintains that due process requires that the Commission hold a meaningful hearing to consider whether Petron's conduct, when measured by the standards applicable to all teachers, warrants disciplinary action.

Under section 5(a)(11) of the Law, an educator is essentially deemed unfit to teach by virtue of the filing of an indictment for a crime involving moral turpitude. Although not specifically providing for a pre-deprivation or post-deprivation hearing at which facts relevant to that determination may be considered, section 5(a)(11) of the Law nevertheless does not prohibit such due process protection. While we recognize the importance of the state's interest in preserving the integrity of its teaching staff and profession, we cannot ignore the rights of individual teachers, particularly where a prompt, post-deprivation hearing would satisfy the requirements of due process while addressing the concerns of the state.[10] *See Federal Deposit Insurance Corporation v. Mallen,* 486 U.S. 230, 108 S.Ct. 1780, 100 L.Ed.2d 265 (1988). These concerns are particularly relevant here where the existence of the pending charge against Petron would deprive Petron of his livelihood even though, ultimately, the charge may never be prosecuted. Because Petron was not afforded minimal due process protection and, as a result, was presumed unfit to teach based on section 5(a)(11) of the Law, that statute, as applied to Petron, violates the constitutional mandates of due process.[11]

On this basis, we reverse the order of the Commission.

### ORDER

AND NOW, this 22nd day of February, 1999, the order of the Professional Standards and Practices Commission, dated December 2, 1997, at No. DI–97–21, is hereby reversed.

Concurring opinion by Judge PELLEGRINI.

PELLEGRINI, Judge, concurring.

While I agree with the majority that Petron's teaching certificate should be reinstated, I would not address the issue of whether he was deprived of due process when his

---

**10.** In claiming a violation of his rights to due process, Petron does not challenge the procedure afforded him here based on the lack of a pre-deprivation hearing.

**11.** While 24 P.S. § 2070.5(a)(11) was intended to provide a quick, easy and convenient method to suspend a teacher's certification, this is not to say that the Department may not achieve the same result by resorting to appropriate sections of the Public School Code of 1949, Act of March 10, 1949, P.L. 30, *as amended,* 24 P.S. §§ 1–101–27–2702.

teaching certificate was suspended once he was indicted either after probable cause was found at a preliminary hearing or because he waived that hearing.

Petron was arrested on charges of simple assault and endangering the welfare of children. Because the charges were for crimes involving moral turpitude, the Department of Education (Department) filed a Notice of Charges and a motion for summary judgment with the Professional Standards and Practices Commission (Commission) seeking to suspend Petron's teaching certificate pursuant to Section 5(a)(11) of the Teacher Certification Law (Law).[1] Under that section, the Commission has the power to suspend the teaching certificate of any professional educator indicted for a crime involving moral turpitude. Because Petron had been accepted into the Accelerated Rehabilitative Disposition Program (ARD Program), he responded by arguing that the charges against him had been disposed of by his acceptance into the ARD Program, and that the suspension of his teaching certificate violated his due process rights because he had been suspended without a hearing. The Department filed a motion for summary judgment which the Commission granted. Petron filed an application for reconsideration which the Commission denied, but it vacated its previous order and ordered the suspension of his teaching certification with automatic reinstatement upon his successful completion of the ARD Program. Petron then appealed to this Court arguing that because he was accepted into the ARD Program, the charges against him were postponed unless he violated a condition of that program and, therefore, his teaching certificate could not be suspended. He also argued that because Section 5(a)(11) of the Law mandated the suspension based solely upon the indictment, it violated his due process rights by depriving of him of either a pre-or post-deprivation hearing.

Addressing the first issue, the majority disagrees with Petron and instead concludes that even while in the ARD Program, the charges against him remained pending and his suspension was proper pursuant to Section 5(a)(11) of the Law. However, the major-

ity then goes on to determine that Petron was improperly suspended when he was suspended pursuant to Section 5(a)(11) without a hearing and deprived of his due process rights. I disagree with the majority that Petron's suspension was required by Section 5(a)(11) of the Law, and because it was not required, I would not reach the issue of Petron's deprivation of due process rights.

Section 5(a)(11) of the Law provides in relevant part:

(a) The ... Commission shall have the power and its duty shall be:

(11) to suspend the certificate of any professional educator indicted for a crime involving moral turpitude ... and to revoke the same upon conviction thereof...

The purpose of Section 5(a)(11) of the Law is to protect children from the alleged perpetrator during the pendency of the litigation so as not to allow them to be subject to the crimes involved.

The majority points out that although prosecution on the charges against Petron is postponed while he participates in the ARD Program, the charges against him are not dismissed until he successfully completes the program. However, I do not believe that is the type of "indictment" envisioned by Section 5(a)(11) of the Law because the matter, for all intents and purposes, has been resolved.

The authority for the ARD Program comes from our Supreme Court which, pursuant to its authority to supervise the trial courts, created the ARD rules in 1972 consisting of Pa.R.Crim.P. 175–186. *Commonwealth v. Lutz*, 508 Pa. 297, 495 A.2d 928 (1985). In *Lutz*, our Supreme Court explained that the ARD Program:

is a pretrial disposition of certain cases, in which the attorney for the Commonwealth agrees to suspend prosecution for an agreed upon period of time in exchange for the defendant's successful participation in a rehabilitation program, the content of which is to be determined by the court and applicable statutes.

---

1. Act of December 12, 1973, P.L. 397, *as amended, 24 P.S. § 2070.5(a)(11).*

Under the ARD rules ... the district attorney has the discretion to refuse to submit a case for ARD, and if the case is submitted for ARD, the court must approve the defendant's admission. These rules ... also provide that the defendant must agree to the terms of the ARD, and that after he has completed the program successfully, the charges against him will be dismissed, upon order of court. If he does not complete the ARD successfully, he may be prosecuted for the offense with which he was charged. The district attorney's utilization of ARD is optional under the rules.

*Id.* at 303, 495 A.2d at 931. The purpose of participation in the ARD Program was previously explained by our Superior Court in *Commonwealth v. Krall,* 290 Pa.Super. 1, 434 A.2d 99 (1981), when it stated:

[T]he thrust of the A.R.D. Program is to enable a defendant, before he has been convicted of a crime, to enter into a program which hopefully will result in his rehabilitation without the necessity of trial and conviction. If the program does not succeed the Commonwealth may then proceed on the charges. In effect, admission into the A.R.D. Program places the criminal proceedings in abeyance, subject to being reactivated under certain conditions.

*Id.* 434 A.2d at 100–101. Essentially, the ARD Program is utilized to resolve cases without having additional court proceedings, but that is not to say that there is no judicial resolution of a case. When an individual participates in an ARD Program, the matter is resolved one way or the other—either the individual successfully completes the program and the charges are dropped, or he doesn't and there is a subsequent conviction. While technically, there is still an outstanding indictment during this process, as a practical matter, it is "deactivated" while a person is in the ARD Program. As a result, it is not the type of active indictment that the General Assembly meant in Section 5(a)(11) of the Law because there is nothing further that the court has to do at that time. If a

local school district believes that a teacher's conduct warrants disciplinary action, nothing precludes it from taking such action as it deems appropriate, including removal, but once ARD is entered into, the 5(a)(11) automatic suspension no longer applies.

Because we can resolve this case on a non-constitutional basis, I would not address the due process issue.[2]

**2.** For resolution of the due process issue, *see Slater v. Pennsylvania Department of Education,*

725 A.2d 1248 (Pa.Cmwlth.1999).