Jane Ellen PARDUE, Petitioner,

v.

DEPARTMENT OF EDUCATION,
Respondent.

Commonwealth Court of Pennsylvania.

Argued Nov. 4, 2002.
Decided Jan. 31, 2003.

William A. Hebe, Wellsboro, for petitioner.

Mark G. Zaccarelli, Harrisburg, for respondent.

Sandra D. Boyle, Nicholson, for intervenor, Lackawanna Trail School District.

BEFORE: McGINLEY, Judge, LEAVITT, Judge, and McCLOSKEY, Senior Judge.

OPINION BY Judge LEAVITT.

Jane Ellen Pardue (Pardue) petitions for review of an adjudication of the Professional Standards and Practices Commission (Commission).[1] The adjudication de-

---

1. The Commission was established by the act known as the Teacher Certification Law. *See,* Section 3 of the Act of December 12, 1973, P.L. 397, 24 P.S. § 12–1253 (Teacher Certification Law). The Commission consists of thirteen members appointed by the Governor; its statutory mandate is to work with the State Board of Education to establish standards for professional educators and to conduct hearings on matters of professional edu-

nied Pardue's request for clarification of the Commission's order to reinstate her teaching certification. We affirm the Commission.

On April 23, 1997, the Lackawanna Trail School District (District) suspended Pardue from her position as an elementary school teacher as a result of her arrest for criminal stalking and harassment. On August 25, 1997, the District converted her status to a suspension without pay. The District reported Pardue's suspension to the Department, which thereupon initiated proceedings to suspend Pardue's professional teaching certificate [2] pursuant to the controlling statutory provision found in Section 5(a)(11) of the Teacher Certification Law, 24 P.S. § 12–1255(a)(11) [3]. R.R. 8a. On October 30, 1997, the Commission suspended Pardue's teaching certificate. Pardue petitioned this Court for review of the Commission's suspension order, but she withdrew her appeal on March 17, 1998. Certified Record 28.

On May 12, 1999, after a jury trial, Pardue was acquitted of the criminal charges. On September 30, 1999, the Commission ordered that Pardue's teaching certificate be reinstated "immediately." The order did not specify the date for the reinstatement; the Department reinstated the certificate as of May 12, 1999, the date of her acquittal. Pardue did not file exceptions to the Commission's order nor did she petition for our review of the September 30, 1999 order.

Pardue then made a demand for back pay for the entire period of her employment suspension, including the period during which her teaching certificate was suspended, *i.e.*, October 30, 1997 to May 12, 1999. When the District refused, Pardue filed a union grievance, which went to arbi-

---

cator discipline. The Commission does not initiate disciplinary proceedings; rather, the Department of Education (Department) initiates formal adjudicatory proceedings. Section 9(d) and (f), 24 P.S. § 12–1259(d) and (f) of the Teacher Certification Law. Adjudications of the Commission in matters of discipline may be appealed by the Department or by the professional educator. Section 15 of the Teacher Certification Law, 24 P.S. § 12–1265(a).

The Act of December 20, 2000, P.L. 918, known as the "Professional Educator Discipline Act," 24 P.S. §§ 2070.1a–2070.18a, substantially amended the Act of December 12, 1973, P.L. 397. The core functions of the Commission, however, were not changed. It continues to suggest standards for teacher certification and to conduct hearings on matters of teacher discipline. Its adjudications are binding on the Department, and they may be appealed by the Department or by the professional educator.

Because the Commission has no interest in its adjudications, the named respondent in this, and in other such cases, is the "Department of Education." Pa. R.A.P. 1513(b).

The District suspended Pardue pursuant to the Teacher Certification Law. Her "Petition for Clarification," however, was filed pursuant to the Professional Educator Discipline Act.

2. The Department served a Notice of Charges and Motion for Summary Judgment upon Pardue seeking suspension of her certification as a teacher. Although Pardue responded in writing to the Motion for Summary Judgment, neither Pardue nor her attorney appeared before the Commission at oral argument on the Motion. Reproduced Record 34a (R.R. ———).

3. It provides in relevant part as follows:

(a) The [Commission] shall have the power and its duty shall be:

❉ ❉ ❉

(11) ... *to suspend the certificate of any professional educator indicted for a crime or misdemeanor involving moral turpitude ... and to revoke the same upon conviction thereof* whenever a certified copy of the verdict or judgment or sentence of the court shall have been filed with the [C]ommission, and to direct reinstatement of such certificate by the [D]epartment in any case where after hearing the [C]ommission shall deem the same just and proper.

tration. Prior to the hearing before the arbitrator, Pardue sent a letter to the Department inquiring into the actual date her certificate had been reinstated pursuant to the Commission's order of September 30, 1999. The Department replied that the reinstatement was effective May 12, 1999,[4] and provided a copy of a "Penn Link" or "field notice" published on September 30, 1999 as evidence of the reinstatement's effective date.[5] On November 13, 2001, the arbitrator awarded Pardue back pay for the periods of August 25, 1997 to October 29, 1997 and May 13, 1999 to February 10, 2000, during which time periods her teaching certificate had been in force. R.R. 19a. She was not awarded back pay for the period that her certificate was suspended, *i.e.*, October 29, 1997 to May 12, 1999.

The arbitrator reasoned that the District cannot employ or compensate a teacher who does not hold a teaching certificate.

He further observed that only the Department, not the District, has the authority to reinstate a teaching certificate.[6] He concluded, therefore, that Pardue was not entitled to back pay for the period her teaching certificate was suspended; however, he allowed back pay to October 30, 1997,[7] in the event the Department revised the reinstatement of her teaching certificate to that date. Pardue did not petition to vacate the arbitrator's award.

■ Instead, on November 20, 2001, Pardue filed a Petition for Clarification of the Order of September 30, 1999 with the Commission.[8] On May 23, 2002, the Commission denied Pardue's petition as untimely. It held that Pardue did not assert extraordinary circumstances that would justify her failure to file a petition when it was due: fifteen days after entry of the Commission's adjudication of September 30, 1999.[9] Pardue now seeks our review of

---

4. The *September 30, 1999 order reads as* follows:

   AND NOW, this 30th day of September 1999, upon consideration of the request by Respondent Jane Ellen Pardue for reinstatement, it is hereby ORDERED that the Request is GRANTED and the Department of Education is DIRECTED to immediately REINSTATE all professional teaching certificates previously issued to Respondent.

5. Pardue's counsel was formally advised of the September 30, 1999 order of the Department by letter dated February 28, 2000 in which counsel for the Department enclosed a copy of "the Penn Link notice that the Department issued on September 30, 1999" and noted that "the notice states that the suspension was lifted as of May 12, 1999." R.R. 42a.

6. The arbitrator relied upon Section 1202 of the Public School Code of 1949, which provides, *inter alia:*
   * * *
   No teacher shall teach, in any public school, any branch which he has not been properly certificated to teach.
   Act of March 10, 1949, P.L. 30, *as amended,* 24 P.S. § 12–1202.

7. The arbitrator provided that Pardue would be awarded back pay and benefits for the period between October 29, 1997 and May 13, 1999 should the Department change the reinstatement date. However, the back pay would be reduced by "any interim earnings for work performed during the applicable time period that she had not already been performing prior to her suspension." R.R. 19a.

8. The *District* filed a Petition *to Intervene* which was granted to allow the District to file a Response to the Petition for Clarification.

9. The General Rules of Administrative Practice and Procedure, 1 Pa.Code §§ 31.1–35.251, govern the Commission's procedures. The Commission noted that these Rules do not provide specifically for "Petitions for Clarification." However, clarification is usually requested by a with Petition for Reconsideration, which is recognized in the General Rules at 1 Pa.Code § 35.241. It provides, *inter alia:*
   § 35.241. Application for rehearing or reconsideration.
   (a) Form, filing and service. An application for rehearing or reconsideration may

the Commission's denial of her petition for clarification.[10]

On appeal, Pardue asserts, first, that the Department's suspension of her teaching certificate solely upon the filing of criminal charges, rather than upon conviction, is unconstitutional. Second, she asserts that the Commission erred in not providing her complete reinstatement of her certificate as required to ensure her no abatement in compensation.[11] Third, she argues that the reinstatement order, which has permitted a variety of interpretations, is vague, thereby obligating the Commission to revise its wording. Finally, Pardue maintains that, in any case, the Commission has the discretion under the applicable stat-

ute[12] to address the issue of the date of reinstatement.

■ We address, first, Pardue's constitutional claim, which is based upon our holdings in *Petron v. Department of Education*, 726 A.2d 1091 (Pa.Cmwlth.1999) and *Slater v. Department of Education*, 725 A.2d 1248 (Pa.Cmwlth.1999). Her reliance on these cases is misplaced.

*Petron* and *Slater* are *en banc* decisions, issued on the same day, that considered the constitutionality of Section 5(a)(11) of the Teacher Certification Law,[13] 24 P.S. § 12–1255(a)(11). In each case, a teacher was indicted on criminal charges; the Department moved for suspension; and the

be filed by a party to a proceeding within 15 days, or another period as may be expressly provided by statute applicable to the proceeding, after the issuance of an adjudication or other final order by the agency. The application shall be made by petition, stating specifically the grounds relied upon. (b) Specification of errors. The petitions for rehearing or reconsideration shall state concisely the alleged errors in the adjudication or other order of the agency. If an adjudication or other order of the agency is sought to be vacated, reversed or modified by reason of matters that have arisen since the hearing and decision or order, or by reason of a consequence that would result from compliance therewith, the matters relied upon by the petitioner shall be set forth in the petition.

10. Our scope of review is limited to a determination of whether constitutional rights were violated, whether an error of law was committed or whether necessary findings of fact are supported by substantial evidence. *Startzel v. Department of Education*, 128 Pa. Cmwlth. 110, 562 A.2d 1005 (1989).

11. Pardue asserts, as she did before the arbitrator, that Section 1130 of the Public School Code of 1949 controls. Section 1130 provides, in pertinent part, as follows:

Notice of discharge; procedure on decision favorable to employe
\* \* \*

In all cases where the final decision is in favor of the professional employe, the charges made shall be physically expunged from the records of the board of school directors, but a complete official transcript of the records of the hearing shall be delivered to the one against whom the charges were made. *In all such cases there shall be no abatement of salary or compensation.*
24 P.S. § 11–1130 (emphasis added).

12. Pardue cites Section 5(a)(11) of the Teacher Certification Law, 24 P.S. § 12–1255(a)(11), which, as noted in footnote 1, *infra*, was amended in 2000. Section 5 of the Professional Educator Discipline Act, 24 P.S. § 2070.5, provides as follows:

(a) The Professional Standards and Practices Commission shall have the power and its duty shall be: 7
\* \* \*
(12) To establish procedures which assure that actions concerning discipline of professional educators shall comply with due process.
24 P.S. § 2070.5(a)(12).

13. Subsequent to the decisions in *Petron* and *Slater*, the Law was amended and renamed the Professional Educator Discipline Act. Under the new statute, a criminal indictment may lead to the suspension of a teaching certificate, but the indicted teacher has the right to a pre-suspension hearing. Section 9.2 of the Professional Educator Discipline Act, 24 P.S. § 2070.9b.(1)(i).

Commission granted the motion. Both teachers appealed, asserting that their suspensions violated due process. We held that in light of the teachers' property interests in the certificates, Section 5(a)(11) of the Teacher Certification Law, *as applied,* was unconstitutional.[14] We concluded that the teachers should have been given either a pre-suspension or a prompt post-suspension hearing.

On March 17, 1998, Pardue withdrew her appeal of the Commission's suspension of her teaching certificate. She cannot challenge the constitutionality of the procedures used to suspend her teaching certificate where she refused to avail herself of those procedures. Had she done so, she may have obtained the relief she now claims to be required by the Constitution. In addition, Pardue may have had a second chance to raise the issue when she received the order of September 30, 1999, that reinstated her certificate "immediately." If she believed that due process required a retroactive reinstatement, she should have appealed the September 30, 1999 order or sought its reconsideration by the Commission. She did neither. Simply, Pardue has waived the issue.

The order that is before this Court for review is the order of the Commission denying Pardue's petition for clarification.[15] The arbitrator held that Pardue was not entitled to back pay for the period of suspension *under the terms of the reinstatement order of September 30, 1999.* The petition for clarification is a collateral attack on the Commission's September 30, 1999 order or on the arbitrator's award, or both. In any case, it was untimely filed.

Hearings before the Commission are governed by the General Rules of Administrative Practice and Procedure, 1 Pa. Code § 35.241. Pardue's petition for clarification is in effect, a motion for reconsideration. Reconsideration of an order for "alleged errors" or "by reason of a consequence that would result from compliance therewith" must be filed within 15 days of the order's issuance. 1 Pa.Code § 35.241(b). Here, more than two years elapsed before Pardue sought reconsideration,[16] or clarification of the order of rein-

---

**14.** This Court held: "Although not specifically providing for a pre-deprivation or post-deprivation hearing at which facts relevant to that determination may be considered, section 5(a)(11) of the Teacher Certification Law nevertheless does not prohibit such due process protection." *Petron,* 726 A.2d at 1094. In *Slater,* we explained: "In *Petron,* we determined that section 5(a)(11) of the [Teacher Certification] Law, as applied to the petitioner in that case, violated the constitutional mandates of due process. [W]e now reverse the order of the Commission here and conclude that, as applied to *Slater,* section 5(a)(11) of the [Teacher Certification] Law did not afford Slater minimal due process protection." *Slater,* 725 A.2d at 1250.

**15.** Pardue insists that in a case where the teacher has been exonerated of the criminal charges, due process requires that the teacher's certification be reinstated completely and that the teacher not suffer a loss of pay. The arbitrator opined that the concurring opinion in *Slater* supported this claim of Pardue. In *Slater,* the concurring opinion stated as follows:

> [A] post-deprivation hearing used in the criminal process as a surrogate for the administrative process does not deny due process as long as the indicted owner of the property interest is entitled to be recompensated if acquitted. In this case, the Department could have provided that if Slater was acquitted, she would have been entitled to receive all back pay and benefits and due process would have been satisfied. Absent that, I believe that a hearing within 365 days as provided by Pa.R.Crim.P. 1100(a)(3) does not satisfy the due process requirement of a prompt post-deprivation hearing for an employed teacher.
>
> *Slater,* 725 A.2d at 1254.

**16.** The basis for reconsideration appears to be the effect of the arbitrator's interpretation of the Public School Code of 1949, Act of March

statement. Alternatively, she could have petitioned for this Court's review of the Commission's September 30, 1999 adjudication. In either the reconsideration or the appeal, Pardue could have raised a claim for complete reinstatement of her teaching certificate under the authority of *Petron* and *Slater*. These decisions were rendered and reported on February 22, 1999, prior to the Commission's order of September 30, 1999.

■ Further, we cannot treat her petition for clarification as a *nunc pro tunc* appeal of the Commission's September 30, 1999 order. Pardue does not assert fraud, system negligence, or other extraordinary circumstance sufficient to allow the Commission to find her failure to file a timely petition for reconsideration was non-negligent. *Bass v. Commonwealth,* 485 Pa. 256, 401 A.2d 1133 (1979); *West Penn Power Co. v. Goddard,* 460 Pa. 551, 333 A.2d 909 (1975). In the absence of such asserted grounds, the Commission's decision to deny the petition for clarification as untimely was appropriate.

For these reasons, we affirm the Commission.

### ORDER

AND NOW, this 31st day of January, 2003, the order of the Department of Education, Professional Standards and Practices Commission, dated May 23, 2002, in the above-captioned matter is hereby affirmed.

10, 1949, P.L. 30, *as amended,* 24 P.S. §§ 1–101—27-2702 and the Professional Educator Discipline Act, 24 P.S. §§ 2070.1—2070.18a, as applied to the reinstatement order of Sep-

tember 30, 1999. Pardue takes issue with the decision of the arbitrator, but, she did not appeal that decision.