**BASSETT'S, INC., Appellant**

v.

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, BUREAU OF MOTOR VEHICLES.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs April 5, 2007.

Decided June 14, 2007.

Herman Bloom, Philadelphia, for appellant.

Terrance M. Edwards, Asst. Counsel and Timothy P. Wile, Asst. Counsel In–Charge, Harrisburg, for appellee.

BEFORE: McGINLEY, Judge, SIMPSON, Judge, and KELLEY, Senior Judge.

OPINION BY Judge McGINLEY.

Bassett's Inc. (Bassett's) appeals the order of the Court of Common Pleas of Philadelphia County (trial court) which denied its appeal from the decision of the Commonwealth of Pennsylvania, Department of Transportation (DOT) to suspend the authorization for Bassett's to issue temporary registration cards and registration plates for ten months.

Following a customer complaint, DOT conducted an administrative audit of Bassett's office records. Following the audit, the hearing examiner for DOT conducted a hearing on May 24, 2004. The hearing was described as:

> a Departmental proceeding held pursuant to Section 1374(a) of the Vehicle Code and/or 67 Pa.Code Chapter 43 of Departmental regulations, the final determination of which is subject to de novo review under 42 Pa.C.S. § 933 (relating to Judicial Code.) This *is not* an administrative proceeding subject to the Administrative Code. Strict rules of evidence do not apply; *all* relevant evidence will be considered. (Emphasis in original).

Hearing Summary, May 24, 2004, at 1; Reproduced Record (R.R.) at 23a.

Present at the hearing were Sue Wilson (Wilson), manager, regulated client services section for DOT; John Dorazio, a state trooper with the Pennsylvania State Police; Andrew Shapiro (Shapiro), the owner of Bassett's; and Shapiro's counsel, Lawrence R. Wieder.[1] DOT alleged that Bassett's committed ten violations of Section 1103.1(e)(2) of the Vehicle Code

---

1. Lawrence A. Wieder's name is misspelled as "Weider" in the hearing examiner's report.

(Code), 75 Pa.C.S. § 1103.1(e)(2),[2] for paperwork submitted with incomplete Vehicle Identification Numbers. After hearing, the hearing examiner recommended ten one month suspensions, to be served concurrently. Further, the audit revealed that Bassett's violated Section 1119(b) of the Code, 75 Pa.C.S. § 1119(b), because a copy of a certificate of title had only one signature. The hearing examiner recommended a one month suspension to be served concurrently. The audit also revealed a violation of Section 1119(c) of the Code, 75 Pa.C.S. § 1119(c), because there were two titles improperly assigned to others, not to the lien holders. The hearing examiner recommended a one month suspension to be served concurrently. The next violation involved 67 Pa.Code § 43.5(2)(i)(A) because Bassett's issued a registration without proof of valid insurance. The hearing examiner recommended no action. DOT also uncovered violations of 67 Pa.Code § 43.5(d)(2)(i)(C). Bassett's issued in-transit plates to PA vehicles where: the owner had a Pennsylvania residence and out of state insurance documentation, there was an in-transit plate for a vehicle where there was no copy of a title, and there was an in-transit plate for a customer with a Pennsylvania license and insurance but the title was incomplete. The hearing examiner recommended a written warning for each violation. Further, Bassett's violated 67 Pa. Code § 43.6(e) because registration plates were missing or were not in consecutive order. The hearing examiner recommended a written warning for each violation. Bassett's committed multiple violations of 67 Pa.Code § 43.10(a) because temporary registration cards or plates were issued even though Vehicle Identification Number verifications were completed after the sales of the vehicles. The hearing examiner recommended a one month suspension to be served concurrently for each violation. There were also multiple violations of 67 Pa.Code § 43.10(h) because Bassett's issued temporary registrations without proper documentation. Specifically, DOT alleged that Bassett's issued identification cards or licenses based on non-government issued forms of identification. The hearing examiner recommended a written warning.

After the hearing examiner issued his report, Wilson disagreed with the recommendation. She wrote on the bottom of the hearing examiner's recommendation that she favored a ten month suspension rather than a one month suspension.

By letter mailed June 28, 2004, DOT informed Bassett's of its suspension:

A ten month suspension is imposed for fifty-one violations under Title 67 PA. Code Chapter 43.11(a)II(21); The agent has on two or more occasions violated or failed to comply with, a provision of 75 Pa.C.S. Chapter 11, 13, 21, 23 or 71 or Departmental regulations promulgated under these chapters, except for untime-

2. Section 1103.1(e)(2) of the Code, 75 Pa.C.S. § 1103.1(e)(2), provides:

(e) **Out–of–State vehicles.**—If the application refers to a vehicle last previously titled or registered in another state or country, the following information shall be contained in or accompany the application to be forwarded in support of the application as required by the department:

. . . .

(2) A tracing of the vehicle identification number taken from the official number plate or, where it is impossible to secure a legible tracing, verification that the vehicle identification number of the vehicle has been inspected and found to conform to the description given in the application. The department shall provide by regulation the persons who are authorized to verify vehicle identification numbers under this paragraph.

ly submissions as provided in paragraph (5).

A one month suspension is imposed for each of ten violations under, Title 67 PA.Code Chapter 43.11(a)I(5); The agent has issued a temporary registration card or plate containing a misstatement of fact or other false information, which the agent knew or should have known to be correct or false.

A written warning is imposed under Title 67 PA.Code Chapter 43.11(a)II(1); The agent has not issued temporary registration plates in consecutive order, beginning with the lowest number in each series.

A written warning is imposed under, Title 67 PA.Code Chapter 43.11(a)II(18); The agent has issued a temporary registration to an applicant without proper documentation.

For the violation Title 67 PA.Code Chapter 43.5(d)(2)(i)(A), no action will be imposed.

All suspensions are to be served concurrently.

Order of Suspension of Authorization to Issue Temporary Registration Cards and Registration Plates, June 28, 2004, at 1–2; R.R. at 27a–28a.[3]

Bassett's appealed and the trial court held a de novo hearing on January 20, 2006. Wilson testified concerning the scope of the audit and provided examples of Bassett's misconduct. Wilson explained the procedure for the imposition of sanctions under cross-examination by Bassett's attorney:

Q. There was a hearing held on this matter; was there not?

A. There was an administrative hearing conducted, yes.

Q. And there was a hearing examiner?

A. Yes.

Q. Who was that, if you recall?

A. If you look on page 285 of the certification, it states who was at the hearing and who the hearing examiner was. The name was Stephen Tomassini. Mr. Tomassini is a manager with the Bureau of Motor Vehicles.

Q. So then, he's a hearing examiner and he's also an employee of the Department; is that correct?

A. That's correct.

Q. And he made a decision in this case; did he not?

A. He makes a recommendation.

. . . .

Q. What was the bottom line of his recommendation?

A. Again, it's by violation. He has different recommendations. If you look on page 286, for the first violation, he has recommended the sanction for a first offense, a one month suspension to be served concurrently for each violation.

Q. What does that mean to you?

A. A one month suspension for each of the violations. That contained ten violations.

Q. Are these the same violations that you changed to ten months?

---

**3.** 67 Pa.Code 43.11(a)II(21) provides: "The agent has on two or more occasions violated, or failed to comply with, a provision of 75 Pa.C.S. Chapter 11, 13, 21, 23 or 71, or Departmental regulations promulgated under these chapters, except for untimely submissions as provided in paragraph (5)." The sanction for a first offense is a one month suspension.

67 Pa.Code 43.11(a)I(5) also provides that where "the agent has issued a temporary registration card or plate containing a misstatement of fact or other false information, which the agent knew or should have known to be incorrect or false" the sanction for a first offense is a one month suspension.

A. It would be a one month suspension for each violation, ten violations.

Q. ... When he makes a recommendation, who then accepts or rejects it; is that you?

A. That's correct.

Q. So, you make that determination; correct?

A. That's correct.

Q. Why did you make a determination that it should be ten months instead of one month?

A. Well, there's ten violations there. We take each violation as an offense. So, it would have been a first offense, second, third, or fourth offense, which could result in a revocation of the agent's authorization to issue temporary tags. We took a first offense with a one month violation for each offense after.

The Court: So, you didn't accept his recommendation?

The Witness: That's correct.

The Court: His recommendation was one month to run concurrently and then warnings on other matters?

The Witness: There were two offenses where he did sanctioning as far as a suspension. The other ones were warnings, which we did issue warnings for anything other than what was related to the Vehicle Code....

. . . .

Q. Now, you made a decision to suspend for ten months; is that correct?

A. Right.

. . . .

Q. So, you do not have to report to anybody with this?

A. I report to my manager as far as what I have sent out, yes.

Q. You sent it out already, but did you discuss the ten months with your manager or anyone else prior to changing the hearing examiner's recommendation from one month concurrently to ten months?

A. No. I would have done the ten months.

Q. Was the letter discussed at any point?

A. Yes, before it went out in the mail, with my manager. He would have concurred with that and the letter would have gone out. They would have agreed with what I've decided.

Q. So, you go to him for agreement?

A. Right. I need to report to my manager what I'm doing.

Q. Exactly. Is there something from your manager to indicate that he agreed with you?

A. No, there would not be. That would be a verbal agreement between two of us.

. . . .

Q. So, this was a decision—you consulted with your manager, but the decision as far as you were concerned was already made; am I correct?

A. That was my decision as far as the evidence that I had in front of me, yes, and that was fair.

Keep in mind, for each offense that he had for titles, it's two or more. So, there is, say, 50 violations there, he would have one month suspension for each two violations. We took five violations and combined it into one offense. That's where the ten months comes from.

Notes of Testimony, January 20, 2006, at 105–108, and 110–111; R.R. at 10a–13a and 15a–16a.

The trial court denied Bassett's appeal and reinstated the suspension. The trial court reasoned:

Applying the principles set forth in *Department of Transportation v. Ede Motor Co.* [527 A.2d 632 (Pa.Cmwlth. 1987)] [4], to the facts in the instant matter, the Court may not adopt the one-month suspension recommended by the hearing examiner rather than the ten-month suspension imposed by Penn-DOT. A review of the evidence and testimony provides facts identical to those found at the administrative level. The language of *Department of Transportation v. Ede Motor Co.* clearly rejects the idea that a trial court can modify a PennDOT suspension because it finds the penalty too harsh. Absent findings of fact and conclusions of law different from PennDOT's, the Court is bound by the suspension determined by PennDOT. Thus, while nominally *de novo*, the trial is narrowly focused on whether the person in fact committed the violations for which sanctions were imposed.

Trial Court Opinion, September 29, 2006, at 5.

■ Bassett's contends that the trial court erred as a matter of law when it denied its appeal and reinstated the suspension. Bassett's asserts there was an impermissible commingling [5] of the prosecutorial and adjudicatory functions in violation of due process, where Wilson was involved in both the decision to prosecute Bassett's and participated in the adjudicatory and penalty phases of the proceeding.[6]

---

**4.** In *Department of Transportation v. Ede Motor Company,* 107 Pa.Cmwlth. 107, 527 A.2d 632 (1987), DOT suspended the dealer registration plates and the authorization of Ede Motor Company (Ede) to issue temporary registration plates. DOT became aware of problems with Ede when it received complaints from individuals who had purchased vehicles, but had not received their title papers and registration cards. A garage inspector for DOT visited Ede and determined that Ede had not submitted applications for certificates of title to DOT within ten days as required by Section 1103(d) of the Code, 75 Pa.C.S. § 1103(d). DOT held a hearing and found that Ede failed to timely deliver applications for certificates of title in violation of Section 1103(d) of the Code, 75 Pa.C.S. § 1103. DOT issued a warning for the first violation and notified Ede of three one month suspensions to run concurrently. DOT also informed Ede that its authorization to issue temporary registration plates was likewise suspended for four one-month periods to run concurrently. Ede appealed to the Court of Common Pleas of Bucks County which concluded that the penalty was extreme and reversed. *Ede Motor Co.,* 527 A.2d at 633.

DOT appealed to this Court which reversed: The trial court, in reviewing a DOT license suspension, is limited in its decision solely to a de novo determination as to whether or not the person charged has indeed commit-ted the violation for which the sanction was imposed.... And, where evidence leads to the conclusion of a violation of the law, the trial court may not modify the penalties imposed unless it makes findings of fact *and* conclusions of law different from those of DOT....

The trial court here found that Ede had committed the violations for which it was charged, ... but sustained Ede's appeal solely because it found the penalty to be too severe in light of mitigating circumstances.... A trial court, however, may not reverse or modify a DOT suspension simply because it believes the result harsh.... And it is a manifest abuse of discretion for a trial court to modify a DOT suspension when it finds a punishable violation but disagrees with the penalty imposed.... (Citations and footnotes omitted).

*Ede Motor Co.,* 527 A.2d at 633–634.

**5.** Bassett's raised the issue of commingling, at the earliest time possible, in the memorandum of law it submitted to the trial court.

**6.** This Court's review is limited to a determination of whether findings of fact were supported by substantial evidence, whether there was an error of law or whether there was a manifest abuse of discretion. *Wheatley v. Department of Transportation,* 104 Pa.Cmwlth. 171, 521 A.2d 507 (1987).

Bassett's makes [7] this assertion because Wilson was the individual who conducted the audit. Then, at the DOT hearing, Wilson presented the evidence to substantiate the violations. And at the conclusion of the hearing, although the hearing examiner recommended ten one month suspensions to run concurrently along with written warnings, which are not before this Court, Wilson rejected the recommendation and substituted her own penalty, as approved by her manager.

In *Lyness v. Commonwealth of Pennsylvania, State Board of Medicine*, 529 Pa. 535, 605 A.2d 1204 (1992), our Pennsylvania Supreme Court addressed commingling. In *Lyness*, Joseph E. Hagan (Hagan), the prosecuting attorney for the State Board of Medicine (Board), had investigated a complaint against Samuel S. Lyness, M.D. (Dr. Lyness) for alleged misconduct against a female patient. In an emergency meeting conducted by conference call, the Board voted to cite Dr. Lyness for a formal hearing after it determined there was sufficient evidence to initiate disciplinary action. Hagan issued an Administrative Complaint and Order to Show Cause. The formal charges and complaint against Dr. Lyness were signed by the chairperson of the Board. A neutral hearing examiner was appointed to preside over the disciplinary proceedings. After hearing, the hearing examiner ordered a suspension of Dr. Lyness's medical license for five years and ordered Dr. Lyness to submit himself to medical treatment. Both Dr. Lyness and Hagan sought review by the Board. The Board affirmed the factual findings but ordered the permanent revocation of Dr. Lyness's license. Dr. Lyness petitioned for review with this Court and alleged an improper commingling of prosecutorial and adjudicatory functions. This Court vacated the

decision and remanded to the Board based strictly on the issue of laches. With respect to the commingling, this Court determined that there was no improper commingling. Lyness petitioned for allowance of appeal which our Pennsylvania Supreme Court granted on the due process issue regarding commingling. *Lyness*, 529 Pa. at 537–540, 605 A.2d at 1205–1207.

Our Pennsylvania Supreme Court reversed and remanded:

In determining what process is due Pennsylvania citizens, this Court has established a clear path when it comes to commingling prosecutorial and adjudicatory functions. There is a strong notion under Pennsylvania law that even an *appearance* of bias and partiality must be viewed with deep skepticism, in a system which guarantees due process to each citizen....

. . . .

Nor is the threat to due process inconsequential where eight members of an administrative board (here the Board of Medicine), wear the hat of the prosecutor and make the determination that probable cause exists to bring formal charges; and then the same board—with a number of members identical—later wears the robe of the judge to make a presumably impartial adjudication which will determine the fate of a physician's license to practice medicine in this Commonwealth. Whether it is one person or eight who merge the prosecutorial and adjudicatory roles, the danger is equally serious.

. . . .

What our Constitution requires, however, is that if more than one function is reposed in a single administrative entity, walls of division be constructed which eliminate the appearance of bias.... A

'mere tangential involvement' of an adjudicator in the decision to initiate proceeding is not enough to raise the red flag of procedural due process.... Our constitutional notion of due process does not require a *tabula rosa* .... However, where the very entity or individuals involved in the decision to prosecute are 'significantly involved' in the adjudicatory phase of the proceedings, a violation of due process occurs .... such a conclusion is only made more compelling where, as here, the administrative board has virtual *carte blanche* in reviewing the hearing Examiner's findings and replacing it with its own adjudication, with very limited appellate review in the Commonwealth Court.... (Citations omitted) (Footnote omitted) (Emphasis in original).

*Lyness,* 529 Pa. at 542–544, and 547, 605 A.2d at 1207–1208, 1210.

Here, Wilson conducted the field audit of Bassett's. She then presented the evidence against him at the DOT hearing before the neutral hearing examiner. When the neutral hearing examiner recommended a penalty with which Wilson disagreed, Wilson substituted her own penalty, and, according to her own testimony, received verbal approval from her manager so that her recommended penalty became the final order of suspension.

This Court agrees with Bassett's that DOT failed to properly separate the investigatory, prosecutorial, and adjudicatory functions. Wilson clearly served in all

roles. Our Pennsylvania Supreme Court stated in *Lyness* that where an individual involved in the decision to prosecute is significantly involved in the adjudicatory phase of the proceedings a violation of due process occurs.[8]

This Court notes that a de novo hearing by the trial court typically cures the procedural defects that occur during an agency hearing. However, Bassett's contends that the trial court's limited de novo review, as espoused in *Ede Motor Co.,* did not cure the procedural defects caused by DOT's impermissible commingling of the prosecutorial functions because here Wilson brought and prosecuted the charges against Bassett's and determined the penalty.

■ In general when a trial court conducts a de novo review any irregularities or defects which were alleged to have occurred in an administrative proceeding are cured. *Weber v. Department of Transportation, Bureau of Driver Licensing,* 675 A.2d 359 (Pa.Cmwlth.1996). However, the trial court, following the scope of review set forth in *Ede Motor Co.,* did not address the commingling issue or the difference in penalties between the hearing officer's recommendation and Wilson's, which DOT adopted.

It is true in *Ede Motor Co.* and in *Saia's Used Cars v. Commonwealth,* 142 Pa. Cmwlth. 27, 596 A.2d 1212 (1991), another DOT audit case involving multiple violations, this Court found the trial court did not have the authority to address the pen-

---

8. This Court rejects DOT's assertion that because there was no requirement for a formal hearing that Bassett's right to due process was not violated. DOT also asserts that while Bassett's has a substantial property interest in its authorization to issue temporary registration cards and registration plates, the likelihood of an erroneous deprivation of the private interest as a consequence of the procedure adopted was virtually zero and the balancing of the state's interest in preventing fraud in the titling and registering of motor vehicles and promptly determining whether an issuing agent committed a violation outweighs the need for more rigorous procedures. *See Firman v. State Board of Medicine,* 697 A.2d 291 (Pa.Cmwlth.1997), *petition for allowance of appeal denied,* 550 Pa. 722, 706 A.2d 1215 (1998). This Court must disagree with DOT's assessment.

alty imposed once it determined that the agent committed the violations. Neither of those cases involved an alleged violation of the right to due process. Also, neither *Ede Motor Co.* nor *Saia's Used Cars* were procedurally on all fours with the present controversy: where the hearing examiner made one recommendation, which the prosecutor did not like, rejected, and substituted her own.

In order to cure the denial of Bassett's right to due process, the trial court needed to review the penalty phase, not just whether Bassett's committed the violations. This Court agrees with Bassett's that DOT engaged in improper commingling. There was no "wall of separation" between the prosecutorial and adjudicatory functions as required by *Lyness.* This case differs from *Ede Motor Co.* in that Bassett's did not challenge the penalty imposed by DOT on the basis that the penalty was too harsh because of mitigating circumstances. Rather, Bassett's challenged whether its fundamental right to due process was protected when Wilson, the investigator and the prosecutor, disregarded the recommendation of the hearing examiner and substituted her own penalty. In such a situation, it behooves the trial court to determine whether this fundamental right was violated. The trial court should have exercised full de novo review, over the prosecutorial phase and the pen-

alty phase. This Court has defined de novo review as a full consideration of the case at another time. *Civitello v. Department of Transportation, Bureau of Traffic Safety,* 11 Pa.Cmwlth. 551, 315 A.2d 666 (1974). Not to recognize such authority would countenance a travesty and advance the incorrect proposition that DOT may act as investigator, prosecutor, and judge and, at the same time, deny the Court of Common Pleas any discretion during the review of the penalty phase despite a constitutional violation. In addition, it is important to note that neither Wilson before the trial court, nor DOT before this Court, asserted that the hearing examiner abused his discretion or committed any error when he issued his recommendation. Further, it is unclear how Wilson may impose a penalty different than the recommended penalty of the hearing examiner, without a review by the trial court. The limited de novo review of the trial court did not cure the commingling, and the trial court's failure to correct, or even address this problem, constituted reversible error.[9]

Because there is no allegation of an abuse of discretion or any error committed by the hearing examiner and DOT has not established a reason for its failure to accept the recommendation or the grounds under which it may reject such a recommendation, this Court sees no reason why the recommendation of the hearing exam-

---

9. DOT asserts that the trial court applied the wrong scope of review because DOT had discretion concerning the penalty imposed against Bassett's. In *Department of Transportation, Bureau of Driver Licensing v. Fiore,* 138 Pa.Cmwlth. 596, 588 A.2d 1332 (1991), this Court determined that a trial court could alter the traditional restrictions on the scope of de novo review where DOT had discretion to choose from a range of penalties and admitted that the length of suspension imposed was based on administrative considerations, rather than on the severity of the violation. DOT argues that instead of reversing the order of

the trial court, this Court should remand the case to the trial court to conduct a full de novo review. This Court does not agree. Regardless of whether the trial court employed the proper scope of review, this Court has determined that DOT engaged in improper commingling. While normally a remand for a further hearing would be the appropriate remedy, it is a better exercise of judicial resources to substitute the recommended penalty of the hearing officer rather than remand to the trial court, particularly in light of the commingling.

iner should not have formed the basis for the penalty issued by DOT. Accordingly, this Court reverses the order of the trial court and remands to the trial court with instructions to remand to DOT for DOT to accept and impose the penalty recommended by the hearing examiner.

### ORDER

AND NOW, this 14th day of June, 2007, the order of the Court of Common Pleas of Philadelphia County is reversed and this case is remanded to the Court of Common Pleas of Philadelphia County with instructions to remand to the Commonwealth of Pennsylvania, Department of Transportation for the Commonwealth of Pennsylvania, Department of Transportation to impose the penalty recommended by the hearing examiner. Jurisdiction relinquished.